Woodruff *v.* Taylor.

⚫

HARMON WOODRIFF *v.* ABEL L. TAYLOR.

Judgments, in regard to their conclusive effects as estoppels, are of two classes,— judgments *in personam* and judgments *in rem.*

A judgment cannot be supported, as being *in personam,* where the court rendering the judgment had no jurisdiction of the person sought to be affected by it,— he being a citizen of another government and having no notice of the suit.

A judgment *in rem* is an adjudication, pronounced upon the *status* of some particular subject matter, by a tribunal having competent authority for that purpose. It differs from a judgment *in personam* in this, that the latter is, in form as well as substance, between the parties claiming the right; and that it is so *inter partes* appears by the record itself; and it is binding only upon the parties appearing to be such by the record, and those claiming by them. But a judgment *in rem* is founded upon a proceeding instituted, not against the person, as such, but against or upon the thing, or subject matter, itself, whose state or condition is to be determined; and the judgment is a solemn declaration upon the *status* of the thing, and it *ipso facto* renders it what it declares it to be.

The probate of a will is an instance of a proceeding *in rem,* in this state.

HALL, J.

9

Woodruff *v.* Taylor.

There is another class of cases, besides proceedings purely *in rem*, which may be considered, to some extent, proceedings *in rem*, though in form they are proceedings *inter partes*. The object of a proceeding purely *in rem* is to ascertain the right of every possible claimant, and it is instituted on an allegation, that the title of the former owner, whoever he may be, has become divested; and notice, actual or constructive, is given to the whole world to appear and make claim to it. But the *limited* proceedings *in rem*, before mentioned, are not based on any allegation, that the right of property is to be determined between any other persons, than the parties to the suit; no notice is sought to be given to any other persons; and the judgment, being only as to the *status* of the property as between the parties of record, is, as to all other persons, a mere nullity.

An attachment of property, in this state, where the court has jurisdiction of the property, but not of the person of the defendant, and a sale of it (or a levy upon it, if it be real estate,) on execution is in the nature of a proceeding *in rem*. The judgment, if the defendant have no notice, would be treated as a nullity out of our jurisdiction, so far as the person of the defendant was concerned, though it would be held binding, as between the parties, so far as regarded the property, as a proceeding *in rem*. HALL, J.

Our proceeding of foreign attachment partakes, also, of the nature of a proceeding *in rem*; but its operation, as such, is of a limited character. HALL, J.

It is just as essential to the validity of a judgment *in rem*, that constructive notice, at least, should appear to have been given, as that actual notice should appear upon the record of a judgment *in personam*,

This was an action of trespass for taking certain personal property. The defendant pleaded, that he recovered judgment in the court of King's Bench, in Canada, against one Smith, and took out a writ of *fieri facias*, which he caused to be levied upon the property in controversy in this suit, as the property of Smith, and that the property was duly sold and its avails paid into court by the sheriff's bailiff, and that one Johnson then appeared, and claimed to be also a creditor of Smith and demanded an apportionment of the avails of the property, and that the court thereupon ordered an apportionment; that there is a law in Canada, that when the proceeds of property sold on execution are thus paid into court, any person, having any claim to the property, may enter an appearance in court, and that, if he neglect to do so, and judgment of distribution is rendered, as in this case, such judgment is conclusive, both as to the title of the property and the amount of damages and costs, and is a bar, against all persons, to any and all actions founded upon any title, claim, or prossession in or to the property. The plaintiff replied, that the property belonged to himself, and not to Smith, and that during all the time of the pendency of the proceedings in Canada he was a citizen and resident of the United States, and that he had no notice of such proceedings. And it was held, upon demurrer, that the proceedings in Canada could not be considered as *in rem*, and that the replication was a sufficient answer to the plea.

Woodruff *v.* Taylor. .

TRESPASS for taking certain personal property. The defendant pleaded the general issue, and also pleaded two pleas in bar; which were, in substance, that he commenced a suit against one Phelps Smith in the court of King's Bench in the district of Montreal, in Lower Canada, and caused his process to be served by arresting the body of Smith; that in October, 1842, he recovered judgment against Smith, in the suit, for 26£, 15s. 9d., debt, and 56£, 4s. 2d., costs; that in June, 1843, he took out a writ of *fieri facias*, upon the judgment, against the goods of Smith, and placed the same in the hands of the sheriff's bailiff for service; that on the 13th of June, 1843, the goods described in the plaintiff's declaration being in the possession of Smith at Stanbridge, in Lower Canada, the defendant turned them out to the bailiff, in the presence of one Hoyle, *Recors,* and the bailiff levied on the same as the property of Smith; that, after giving public notice of the time and place of sale, at the doors of two churches, on Sunday, June 18, and by posting up notices of the sale at the doors of the churches, the bailiff, on the 26th of June, sold the property, in the presence of the said *Recors* and others, to the highest bidder for 32£, 1s. 3d.; that at the October Term of the court of King's Bench the sheriff returned the *fi. fa.* into court, together with the money received thereon, excepting 8£, 2s. 1d. for the bailiff's costs; that then one Johnson appeared in court and claimed to be a creditor of Smith and demanded a rateable division, with the other creditors of Smith, of the money paid into court; that thereupon the court ordered the money in court to be distributed, as follows,—to the crier and tipstaff 5£, 1s. 6d., to Taylor, the plaintiff in that suit and defendant here, 11£, 5s. 5d., and to Johnson 7£, 11s. 7d.,—being the whole of the proceeds of the sale, that had been paid into court; and that the said judgment still remains in full force. And the defendant averred, that during the time of all these proceedings, and until the time of pleading, there was a custom and law of the said province of Lower Canada, that the proceeds of the sale of goods so levied upon should be distributed, in manner aforesaid, among creditors appearing in court and claiming distribution, and farther, that by the custom and law of said province all persons having claim in any way or manner to the property, so levied upon and sold on execution, are permitted to enter their appearance in court, when the proceeds of the sale are returned,

Woodruff *v.* Taylor.

"and if any person, having such claim, neglect to enter his said appearance and make and prosecute his said claim, judgment of distribution is to be made, by the court, of the money so paid in, in manner and form aforesaid, and the said judgment for debt, or damages, and costs and the final distribution, as aforesaid, is conclusive, both as to the title of said goods and the amount of said damages and costs, and that the same is a bar, against all persons, to any and all actions founded upon any title, interest, claim, or possession, in or to such goods."

To this plea the plaintiff replied, alleging that the property in the goods was in himself, and not in Phelps Smith, and averring, that, during all the period of said proceedings, he was a citizen and resident of the United States, and not a resident or citizen of Canada, nor subject to the laws of that province, and that he had no notice of such proceedings, or any of them. To this replication the defendant demurred.

The county court adjudged the replication insufficient, and rendered judgment for the defendant. Exceptions by plaintiff.

*G. K. Platt* and *J. Mc M. Shafter* for defendant.

The replication, by not denying, admits the fact of the adjudication alleged in the plea, and the conclusiveness of the decree, *in Canada*, but attempts to avoid the force and conclusiveness of the decree *here*, for two reasons;—1. Because the plaintiff is not, or ever has been, a citizen of Canada, or subject to its laws;—2. Because the plaintiff had no notice of the pendency of the process in Canada and the proceedings thereon. We insist, that the judgment pleaded, and its conclusive operation upon the parties *here*, is not affected by either of these reasons.

This judgment was an adjudication upon the *res.* The property was seized and sold as Smith's; and the avails were returned into court as his. At this point the question of property is raised; if the property attached is adjudged the judgment debtor's, the avails go to such of his creditors as have proved their claims; if it is adjudged to have belonged, at the time of service, to a third person, the successful claimant goes out of court with the avails of his property and his costs. The fact, that the adjudication reached the property, is distinctly averred in the plea; and whether this fact appears upon the

face of the record, or in the judgment, is of no importance, provided it does so appear in the one, or the other, or in both. *Gardner* v. *Buckbee,* 3 Cow. 120. *Gray* v. *Pingry,* 17 Vt. 419. This decree, in Canada, is conclusive upon all persons, with or without actual notice, as to all actions and right of property in the goods at the time of the original service.

We insist, that the mere fact of the presence of goods in a country puts them entirely within the power of the sovereign and laws of that country. Vattel, B. 7, §§77—86. Story's Confl. of Laws 22. This principle is fully maintained by a large class of cases in admiralty, where judgments of foreign courts of admiralty have been pleaded to actions brought in the common law courts; and the result of these cases is this,—if the foreign court, rendering judgment, had jurisdiction of the *res,* their decree is conclusive upon the property from the time of its seizure. In none of these cases is the residence of the owner regarded as being an essential, or as forming an element of the decision; but, on the contrary, in many of the cases the doctrine, that actual notice is necessary to the validity of the decree, is canvassed and denied. *Broom's Case,* 1 Salk. 32. *Anon.,* Ld. Raym. 724. *Burrows* v. *Jemino,* 2 Str. 734. *Bolton* v. *Gladstone,* 5 East 155. 2 Taunt. 85. *Baring et al.* v. *Royal Exch. Ins. Co.,* 5 East 99. *Bernardi* v. *Motteux,* Dougl. 574. *Lothian et al.* v. *Henderson et al.,* 3 B. & P. 500. The American cases lead us to the same result. *Ludlow* v. *Dale,* 1 Johns. Cas. 16. *Goix* v. *Low,* Ib. 341. *Vandenheuvel* v. *United Ins. Co.,* 2 Ib. 451. *Baxter* v. *N. E. M. Ins. Co.,* 6 Mass. 277. *Robinson et al.* v. *Jones,* 8 Ib. 536. *Bissell* v. *Briggs,* 9 Ib. 462. *Sawyer* v. *Maine Ins. Co.,* 12 Mass. 291. *Croudson et al.* v. *Leonard,* 4 Cranch 434, [2 Cond. 162.] *Rose* v. *Himely,* 4 Cranch 241, [2 Cond. 98.] *Guestier* v. *Hudson et al.,* 4 Cranch 293, [2 Cond. 109.] *Williams et al.* v. *Armjoyd et al.,* 7 Cranch 423, [2 Cond. 556.] *The Mary,* 9 Cranch 126, [3 Cond. 306.] In *Bradstreet et al.* v. *Neptune Ins. Co.,* 3 Sumn. 600, it was held, that a judgment *in rem,* rendered by a municipal court, stands upon the same ground, as to conclusiveness, as that of an admiralty court. Notice is specified, as being "either personally, or by some public proclamation, or by some notification, or monition, acting *in rem,* or attaching to the thing." In this case want of notice is put as being

evidence of *mala fides* to go to a jury,—not as necessarily invalidating the decree. In *Grant et al.* v. *McLachlin,* 4 Johns. 34, it was held, that a decree and sale by a foreign municipal court, without monition, or process, was conclusive,—being accompanied by possession of the *res* and being in accordance with the *local law. Woodbridge* v. *Austin,* 2 Tyl. 367. Vattel, B. 2. cap. 7, 85. Story's Confl. of Laws 494.

The principle, that a judgment may be good *in rem,* where it is not enforceable *in personam,* is distinctly recognized in our trustee process. The goods of a foreigner, or non-resident, may be attached here, or his credits attached in the hands of his debtors, and the property bound by the adjudication of our court, without any *actual notice;*—so in other states and in England. *Le Chevalier* v. *Lynch,* Dougl. 170. *McDaniel* v. *Hughes,* 3 East 367. *Hull* v. *Blake,* 13 Mass. 152. *Holmes* v. *Remsen,* 20 Johns. 229. *S. C.,* 4 Johns. Ch. R. 468 2 Kent 321.

*A. G. Whittemore* and *D. A. Smalley* for plaintiff.

1. Though by the laws of Canada Woodruff might have been estopped from asserting his title to the property by the decree of distribution in the King's Bench, if a resident there, it cannot affect him now, because he never owed any allegiance to that government and had no notice of any such laws, or proceedings. It is a principle of universal application, that a judgment, or other legal proceeding, without notice to the defendant, is utterly void. *Fisher* v. *Lane,* 3 Wils. 297. *Buchanan* v. *Rucker,* 9 East 191. *Ferguson* v. *Mahon,* 39 E. C. L. 38. *Price* v. *Dewhurst,* 11 Cond. Ch. R. 437. *Cavan* v. *Stewart,* 1 Stark. R. 525, [2 E. C. L. 496.] Story's Confl. of Laws 457. A discharge under an insolvent law of Scotland cannot be pleaded in bar of a contract made in England. *Phillips* v. *Allan,* 3 B. & C. 477, [15 E. C. L. 269.] The same rule holds as to discharge in Scotland, or America. *Lewis* v. *Owen,* 4 B. & Ald. 654, [6 E. C. L. 555.] *Smith et al.* v. *Buchanan,* 1 East 6. *Pedder* v. *MacMaster,* 8 T. R. 609. *Van Hook* v. *Whittock,* 26 Wend. 43. Divorces, granted in one State, where the petitionee resides without the State and has no notice, are treated as *nullities. Borden* v. *Fitch,* 15 Johns. 121. *Bradshaw* v. *Heath,* 13 Wend. 407. *Hanover* v. *Turner,* 14 Mass. 227.

Woodruff v. Taylor.

2. There was no process, or allegations, or proceedings, directed against Woodruff, or his property;—the whole was against Smith and *his* property. In order to change the property by a judicial decree, or sentence, there must be a process and allegations directly against the property itself, or its owner, and judgment thereon. *Sawyer* v. *Maine Ins. Co.*, 12 Mass. 291. *Obicini* v *Bligh*, 8 Bing. 335, [21 E. C. L. 309.] *Sadler* v. *Robins*, 1 Camp. 253. *Bradshaw* v. *Heath*, 13 Wend. 407. *Christie* v. *Secretan*, 8 T. R. 192. *Fisher* v. *Ogle*, 1 Camp. 363. 2 Smith's Leading Cas. 447. *Bernardi* v. *Motteux*, 2 Doug. 575. *Calvert* v. *Bovill*, 7 T. R. 519. 2 E. C. L. 216. 2 U. S. Cond. R. 78.

The decree of the court of King's Bench does not assume to examine or settle the property sold by the bailiff, nor even to inquire as to its ownership. It only distributed the money raised by sale of the property and cannot have a retrospective effect and merge the previous torts, unless Woodruff actually came into court, set up his claim, and took the money, or his distributive share of it. It is not pretended, that the decree of the court passed the title to the property; that was done, if at all, by the bailiff's sale, and before any return thereof was made to the court. If the omission of Woodruff thereupon to appear in that court and make claim to the money would, by the local laws of Canada, bar a subject resident in Canada, or even a foreigner, without notice, in a suit brought in their provincial courts for the property itself, it is a mere local law of limitations, which affects only the remedy, and is of no force in a foreign country,—certainly not as against the citizens of that country. Story's Confl. of Laws 482. *Cartier* v. *Paige*, 8 Vt. 146.

4. Though the sale of the property by the bailiff to a third person might change the title to the property and vest it in the purchaser, like a sale in *market overt*, it cannot protect the defendant, who was the original trespasser. *The Arrogante Barcelones*, 7 Wheat. 496, [5 Cond. 332.] *La Nereyda*, 8 Wheat. 108, [5 Cond. 400.]

5. If the suit in Canada had been against Woodruff, and a judgment had been rendered against him, even without notice, and his property had been taken and sold on *fi. fa.*, it might bind the property; Story's Confl. of Laws 440. But here the proceedings were against Smith, and the property was taken and sold as his. The defendant has therefore only acquired Smith's title, and is protected

Woodruff v. Taylor.

only as against him ; for it is not pretended, that the *fi. fa.* against Smith authorized him to take Woodruff's property.

6. The defence relied upon in this case is repugnant to natural justice, and could not be enforced in England against a British subject; and much less should it be against the citizens of other governments. *Cranstown* v. *Johnson*, 3 Ves. 170. *Smith* v. *Nicolls*, 5 Bing. N. C. 208, [35 E. C. L. 88.] *Cavan* v. *Stewart*, 1 Stark. R. 525. [2 E. C. L. 496.] *Price* v. *Dewhurst*, 11 Cond. Ch. R. 457. Story's Confl. of Laws 461. *Dash* v. *Van Kleek*, 7 Johns. 477.

7. The laws and customs of Canada, as set forth in the pleas in bar, do not, by any fair or just construction, extend to foreigners, or non-residents, who have no notice of the proceedings. The words "all *persons*" and "any person" must be construed to mean all within the jurisdiction of the court, or province, or who had notice of the proceedings. *Dash* v. *Van Kleek*, 7 Johns. 477. *Gilman* v. *Shooter*, 2 Mod. 310. *Couch* v. *Jeffries*, 4 Burr. 2460. *Smith* v. *Nicolls*, 35 E. C. L. 88. *Lowry* v. *Keyes*, 14 Vt. 66. *Briggs* v. *Hubbard*, 19 Vt. 86.

The opinion of the court was delivered by

HALL, J.   A second argument having been directed in this case, it has perhaps assumed an importance in the eyes of counsel, which its intrinsic difficulties may not seem to warrant; but which may, nevertheless, justify a more extended opinion, than would otherwise have been deemed necessary.

The question raised by the pleadings is, what is to be the effect of the proceedings in the King's Bench in Canada upon one not personally amenable to its tribunal,—when those proceedings are used here, in another and foreign jurisdiction? It is insisted, in behalf of the defendant, that the record pleaded, in connection with the custom and law of Canada set forth in the plea, is to be considered as conclusive evidence, that the matter now in controversy between the plaintiff and defendant has been adjudicated by a competent tribunal, and that therefore the plea is a good bar to the action. This renders it necessary to inquire into the nature of those proceedings, in reference to their sufficiency to constitute a record estoppel.

Judgments, in regard to their conclusive effects as estoppels, are

of two classes;—judgments *in personam* and judgments *in rem.* The judgment pleaded in this case cannot be supported as a judgment *in personam,* because the court rendering it had no jurisdiction of the person of the plaintiff, he being a citizen of another government and having no notice of the suit. As a proceeding against his person, the judgment was *coram non judice,* a mere nullity. This is too plain to need argument, and is, indeed, conceded by the counsel for the defendant, who insist, that it is an estoppel as a proceeding *in rem,*— that although not binding on the person, it is binding on the property in controversy and concludes its title. A judgment *in rem* I understand to be an adjudication, pronounced upon the *status* of some particular subject matter, by a tribunal having competent authority for that purpose. It differs from a judgment *in personam* in this, that the latter judgment is, in form as well as substance, between the parties claiming the right; and that it is so *inter partes* appears by the record itself. It is binding only upon the parties appearing to be such by the record and those claiming by them. A judgment *in rem* is founded on a proceeding instituted, not against the person, as such, but against or upon the thing or subject matter itself, whose state, or condition, is to be determined. It is a proceeding to determine the state, or condition, of the thing itself; and the judgment is a solemn declaration upon the *status* of the thing, and it *ipso facto* renders it what it declares it to be.

The probate of a will I conceive to be a familiar instance of a proceeding *in rem* in this state. The proceeding is, in form and substance, upon the will itself. No process is issued against any one; but all persons interested in determining the state, or condition, of the instrument are constructively notified, by a newspaper publication, to appear and contest the probate; and the judgment is, not that this or that person shall pay a sum of money, or do any particular act, but that the instrument is, or is not, the will of the testator. It determines the *status* of the subject matter of the proceeding. The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world, (at least so far as the property of the testator within this state is concerned,) just what the judgment declares it to be. This is one instance of a proceeding upon a written instrument, to determine its state, or condition; and

10

Woodruff v. Taylor.

that determination, in its consequences, involves and incidentally determines the rights of individuals to property affected by it.

But proceedings *in rem* may be and often are upon personal chattels, directly declaring the right to them. In such cases the proceeding is for the supposed violation by the property, so to speak, of some public or municipal law, or regulation, by which it is alleged the title of the former owner has become divested. The property being seized, a proceeding is then instituted against it, upon an allegation stating the cause for which it has become forfeited; upon which public notice is given, in some prescribed form, to all persons to appear and contest the allegation. It is by no means certain, that all persons having an interest in the property have actual notice of the proceeding; but if the thing itself, upon which the proceeding is had, be within the jurisdiction of the court, all persons interested are held to have constructive notice; and the sentence, or decree, of the court, declaring the state, or condition, of the property, is held to be conclusive upon all the world. A sale of the property, under such sentence, passes the right absolutely; and farther, in the case of judgments of courts of admiralty, they are also held to be conclusive evidence of the facts stated in the decree to have been found by the court, as the basis of the decree. And perhaps the judgments of municipal courts, acting *in rem*, within the sphere of their jurisdiction, would have the same effect.

These proceedings, that have been mentioned, are purely *in rem*. But, besides these, there is another class of cases, which may perhaps be considered, to some extent, proceedings *in rem*, though in form they are proceedings *inter partes*. An attachment of property in this state, where the court has jurisdiction of the property, but not of the person of the defendant, and a sale of it (or a levy upon it, if it be real estate,) on execution, is in the nature of a proceeding *in rem*. The judgment, if the defendant have no notice, would be treated as a nullity out of our jurisdiction, so far as the person of the defendant was concerned; though it would be held binding, as between the parties, so far as regarded the property, as a proceeding *in rem*. The defendant would not, I apprehend, be allowed to recover back his property in another jurisdiction. The *status* of the property, as between the plaintiff and defendant, would be held to have been determined by the proceeding. But the proceeding

would not in any way affect the *status* of the property as to any other persons, than the parties to the record and those claiming by them.

Our proceeding of foreign attachment partakes, perhaps still more, of the nature of a proceeding *in rem;* but its operation as such is also of a limited character. The suit is *inter partes,* and, as a proceeding *in rem,* it must be confined to such parties. A process is issued in favor of a plaintiff, declaring against his debtor residing in another government, and alleging, also, that another person here, named in the process and styled a trustee, has goods in his hands belonging to the plaintiff's debtor, or is indebted to him, and praying that the goods or debt found here may be declared forfeited to the plaintiff, or, in other words, that the property here may be applied in payment of the plaintiff's demand. I conceive the court here has jurisdiction of the property in the hands of the trustee, or the debt due from him,—it being found in our jurisdiction,—and that the court may proceed upon it *in rem.* After publication, by which the debtor is constructively notified of the proceeding against his property, the court adjudicates upon the property and declares that it shall be delivered, or paid, to the plaintiff, to be applied upon his debt. I think such adjudication changes the *status* of the property, or debt, and deprives the principal debtor of all title to it; that such adjudication should be held binding and conclusive upon all the parties to the proceeding; that the foreign creditor of the trustee, having placed his property, or his credit, within this jurisdiction, should be bound by its forfeiture, declared by our courts; and that he should be barred, in any other jurisdiction, from prosecuting his claim against the trustee. But the operation of this proceeding *in rem* must be limited to the parties to it, and cannot in any manner affect the right or interest of any other person, having an independent and adverse claim to the goods, or debt, which was the subject matter of the suit. The court does not pretend to notify such adverse claimant, either constructively, or otherwise; nor does the proceeding profess to determine the rights of any other persons, than those who are parties of record to it; and it can, consequently, affect the rights of no other persons.

The distinction between proceedings purely *in rem* and those of a limited character, which have been mentioned, I think is strongly

and plainly marked. The object and purpose of a proceeding purely *in rem* is to ascertain the right of every possible claimant; and it is instituted on an allegation, that the title of the former owner, whorever he may be, has become divested; and notice of the proceeding is given to the whole world to appear and make claim to it. From the nature of the case the notice is constructive, only, as to the greater part of the world; but it is such as the law presumes will be most likely to reach the persons interested, and such as does, in point of fact, generally reach them. In the case of a seizure for the violation of our revenue laws, the substance of the libel, which states the grounds on which the forfeiture is claimed, with the order of the court thereon, specifying the time and place of trial, is to be published in a newspaper, and posted up a certain number of days; and proclamation is also made in court for all persons interested to appear and contest the forfeiture. And in every court and in all countries, whose judgments are respected, notice of some kind is given. It is, indeed, as I apprehend, just as essential to the validity of a judgment *in rem*, that constructive notice, at least, should appear to have been given, as that actual notice should appear upon the record of a judgment *in personam*. A proceeding professing to determine the right of property, where no notice, actual, or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding. It would be a mere arbitrary edict, not to be regarded any where as the judgment of a court. *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn. 607.

The *limited* proceedings *in rem*, before mentioned, are not based on any allegation, that the right of property is to be determined between any other persons than the parties to the suit; no notice is sought to be given to any other persons; and the judgment being only as to the *status* of the property as between the parties of record, it is, as to all other persons, a mere nullity.

If we apply these principles to the record pleaded in bar in this case, I think it will be impossible to maintain, that, as to the plaintiff Woodruff, it was a proceeding *in rem*. There was no allegation, that the *status* of the property, levied upon as the property of Phelps Smith, or the avails of it, when paid into court, was to be adjudicated as to him, and there was no notice, actual, or constructive, to him, to appear and make any claim to it. The judgment

Woodruff *v.* Taylor.

was rendered in a suit *inter partes*, in which Taylor was plaintiff and Phelps Smith defendant; and though it bound the property as between them, it could affect the rights of no other person. It is precisely the case of the levy of an execution, in this state, upon personal property, as that of the judgment debtor, of which property some third person claims to be the owner. If such third person were to bring trespass against the judgment creditor for making the levy, I do not perceive why such creditor, with the same propriety as the defendant in this case, might not plead his levy and sale in bar as a proceeding *in rem*. The record in this case, indeed, shows, that the levy was made in the presence of a *Recors*, which a levy in this state would not; but I apprehend the high standing or official character of the witnesses to a trespass would not purge its illegality, or bar a right of recovery.

But the record of the judgment in the King's Bench wholly fails to show, that the right of the plaintiff in this suit to the property was attempted to be adjudicated; and there is no averment in the plea, that it was adjudicated. The plea states, in substance, that, by the law of Canada, it would have been adjudicated, if the plaintiff had appeared in the court and made claim to the property. And by the facts set forth in the plea we are given clearly to understand, that it was not adjudicated, because the plaintiff did not so make his claim. It would therefore be impossible to maintain this plea, as furnishing evidence that the matter in controversy is *res adjudicata*, even if the plaintiff had had notice of the proceeding. If the plea could, under such circumstances, be sustained, even in the courts of Canada, it would not be because the matter had been adjudicated, but because the plaintiff, having neglected to have his claim adjudicated at the time and in the manner pointed out by the laws of that province, was thereby barred of any other remedy. The plea does not aver, that the property of the plaintiff, being found in the possession of Phelps Smith, in Canada, might for that reason, or for any other reason, be legally levied upon and sold as the property of Smith. It in effect admits, that the original levy upon the plaintiff's property was wrongful, but proceeds upon the ground, that, by reason of the subsequent proceedings, the wrong cannot now be redressed. The original right of action of the plaintiff is conceded, but it is insisted, that, by something arising *ex post facto*, his reme-

dy is gone. It is not a bar to the right that is relied upon, but a bar to the redress. This ground of defence would therefore seem to rest upon a local law of the province of Canada, which affects the plaintiff's remedy only, but which, by the well settled doctrine of the common law, can be of no avail, when a remedy is sought in another jurisdiction.

But it is unnecessary to consider farther, what might have been the effect of the defendant's plea, if the plaintiff, at the time, had been a resident of Canada; because it seems quite clear, that it can have no effect whatever upon the cause of action of one who was, during the whole proceeding, a resident citizen of another government, not subject to the law of the province, and who had no notice of the proceeding. Story's Confl. of Laws 487.

The result is, that the judgment of the county court is reversed, the replication is held sufficient, and the case is remanded to the county court for the trial of the issue of fact.