RUFUS PUTNAM v. HOLLIS McDOUGALL AND JOHN McDOUGALL.

*Foreign Judgment. Estoppel.*

In trover for a wagon, it appeared that S. as the agent of the plaintiff, had possession of the wagon, with unlimited authority to dispose of it as he pleased, and was to account therefor to the plaintiff; that he took the wagon to Canada, where he had formerly resided, to sell, and there called it his own, and offered to sell it to the defendants in payment of a debt he owed them; that the defendants seized it by garnishee process duly issued in their favor against S., obtained judgment, and sold the wagon on execution; all which proceedings were lawful and final between the parties to that suit, and estopped the plaintiff from any remedy in the Canadian courts. S. notified the plaintiff, who resided in Massachusetts, of the seizure of said wagon, and the plaintiff had time and opportunity to appear and assert his claim thereto, but did not do so. S. was not domiciled in Canada, and did not appear in said suit for any purpose, although he was authorized to appear as the plaintiff's agent, and assert the plaintiff's claim to said wagon. *Held*, that the plaintiff was not bound by the judgment and proceedings of the Canadian court, nor estopped by the conduct of S. in relation to the wagon.

TROVER for a wagon. The case was referred, and the referee made the following report :

" Asahel P. Squires, a brother-in-law of the plaintiff, had, previously to 1868, resided in Stanstead, Canada, where the defendants then resided and now reside, and while residing there, he was unfortunate in the loss of property by fire, and became financially involved. In the summer of 1868, he leased a hotel in Colebrook, N. H., and as the hotel received most of its patronage from summer boarders from cities and elsewhere, it was indispensable to success that a livery should be kept with it. Not having means to purchase the necessary carriages for running a livery, he applied to the plaintiff, who let him have eight hundred dollars to lay out in carriages, and the carriages were to be the plaintiff's property. Squires purchased carriages to the amount of the eight hundred dollars, or nearly that, and used them in his livery until snow fell in the fall of the year. In December, Squires having disposed of his lease of the hotel in Colebrook, the plaintiff gave him a power of attorney to dispose of the property purchased with the money furnished by him. Squires sold all the carriages except the one in controversy, and accounted to the plaintiff for the proceeds. The wagon in controversy was taken by Squires to Canada, for the purpose of effecting a sale of it there. He

took it to Coaticook, and left it at the hotel of Stephen Davis in the care of one William Webster. On the 25th of June, 1869, the wagon was seized in the possession of said Webster, garnishee, by process duly issued in the circuit court in and for the county of Stanstead, in the District of St. Francis, and Province of Quebec, and such proceedings were had that judgment was rendered in said court in favor of the defendants in this case against the said Squires, and on the 11th day of February, 1871, a writ of *venditioni exponas* issued, upon which said wagon was sold on the 8th day of March, 1871, by George Rogers, bailiff, and the proceeds of the sale applied on said judgment. Copies of the proceedings of said circuit court were offered as evidence by the defendants, to the reception of which the plaintiff objected, but they were received. The plaintiff objected for the reason that the judgment and proceedings were not pleaded in bar of this suit, as well as for any and all cause of objection.

" Joseph Lee Terrill, of Stanstead, an advocate and attorney practicing in Canada, testified that from his personal knowledge, and from the inspection of the copies of the record above referred to, the proceedings relating to seizure and sale of said wagon were correct, and in accordance with the laws of said province. I therefore find that the said seizure, judgment, and sale, were lawful and final as between the parties to that suit. The said Terrill also testified with regard to the service of writs, that the law required that the writ be served personally upon the defendant, or at his domicil, if he has one, and if he has no domicil, and if he lives beyond the jurisdiction of the courts, in a foreign country, by advertisement of a rule granted by the clerk of the court in vacation or by the judge in term time ; that service under a rule calling in the party by advertisement, has the same effect after default as personal service has ; that a default may be removed by special application to the court, supported by good grounds, at any time before judgment, but not after, if rendered by a judge in term ; that the records show that the wagon was properly ordered to be turned over to the bailiff to be sold, properly seized by the court, and properly advertised by the bailiff, and by him properly sold. Q. by defendants' counsel. ' Could McDougall Brothers, after seizure and disclosure of the garnishee, have legally delivered the wagon to any third person claiming to own it ? A. They could not. Q. Why not ? A. I think the copy of the writ of *saisie arret* in this cause, is sufficiently explicit to answer this question ; that the property being in the hands of the court, could not be disposed of in any way except by order of the court, and when disposed of by order of the court, as

the papers in this case show. was conclusive upon all parties. The proceedings settle the title. All persons having any interest in property seized, are bound, by our laws, to appear by intervention, meaning a petition presented to the court by the party claiming ownership and seeking the setting aside of the seizure, at any time before issuing the writ for selling the property, or by an opposition in writing, sworn to by the claimant or his agent, and served upon the officer in charge of the writ, at any time prior to the sale, and in no other manner can the property seized be released or the sale thereof stayed. There is a provision in the law by which parties claiming to have an interest in the property, may claim their interest, or a portion thereof, saving the costs and expenses of the case, by delivering to the officer who effects the sale, an opposition sworn to by the claimant or his agent, at any time prior to the delivery of the money to the plaintiff. If the claimant does not interfere by intervention or opposition in the manner stated, the law of Canada leaves the title to the property where the court places it, and discharges the party in whose interest the sale is made, from liability to any person whatever.' I find the law and practice of the courts in the Province of Quebec to be as testified to by said Terrill, and that the plaintiff is estopped from any remedy in Canada courts. I further find that the plaintiff was notified by Squires of the seizure of said wagon, and that he had time and opportunity to have asserted his claim under the laws and practice of said courts.

" While I find that said wagon was, in fact, the property of this plaintiff, the evidence disclosed that Squires was accustomed to call it and the other carriages of the plaintiff, his property ; that on repeated occasions while trying to sell the wagon in Canada, he called it his, and that he so called it to the garnishee and others when at the hotel of said Davis in Coaticook, and he told Hollis McDougall on this occasion, while trying to sell said wagon, that the wagon was his, and offered to sell it him and deduct the sum he owed McDougall Bros. from the price of the wagon. The plaintiff, who then resided in Athol, Mass., paid very little attention to the property, never in fact having seen it. Having full confidence in Squires, he allowed him, under the authority of said power of attorney, and a previous one of more limited authority which was not produced, to do as he pleased with the property, not doubting but he would account to the plaintiff for the profits of the livery, which was run in the plaintiff's name, and for the proceeds of the carriages sold, or pay him the eight hundred dollars, and 7 3-10 per cent. interest thereon, which was all the

plaintiff required.    The plaintiff, by said Squires, made a demand
of said wagon after seizure and before suit brought.

" If from the foregoing facts the plaintiff is entitled to recover,
I find that the wagon was worth $125, and that the plaintiff is
entitled to recover that sum, with interest from the 25th of June,
1869, the time of the seizure, amounting to $153.37."

The court, at the April term, 1873, BARRETT, J., presiding,
rendered judgment on the report for the defendants, *pro forma ;*
to which the plaintiff excepted.

*Field & Tyler*, for the plaintiff.

The referee finds that the wagon was the property of the plain-
tiff at the time of the seizure and conversion by the defendants.
Copies of the said proceedings in the Canadian court were offered
and admitted by the referee, under the objection of the plaintiff
that they were not pleaded in bar of this action.    We claim that
the referee should have excluded this evidence.    Gen. Sts. ch. 30,
§ 32, ch. 33, § 15.

Upon the facts found, that the property belonged to the plaintiff
at the time of its seizure and conversion, and that he was not and
never had been a resident citizen of Canada, it is insisted that the
seizure and conversion, under the proceedings instituted, were in
violation of a well-established principle of the common law.
" No sovereignty can extend its process beyond its own territorial
limits, to subject either persons or property to its judicial decisions.
Every exertion of authority of this sort beyond this limit, is a
mere nullity, and incapable of binding such persons or property
in any other tribunal."    *Picquet* v. *Swan*, 5 Mason, 35 ; Story
Confl. Laws, ch. 14, § 539.    In *Buchanan* v. *Rucker*, 9 East, 192,
Lord ELLENBOROUGH says : " The Island of Tobago could not pro-
vide by law that nailing up a summons on the court house door,
should be obligatory upon defendants who were subjects of other
countries."    In *Bissell* v. *Briggs*, 9 Mass. 461, PARSONS, Ch. J.,
decided, that in order to entitle a judgment rendered in any court
in the United States, to full faith and credit, the court must have
had jurisdiction not only of the cause, but also of the parties.
We insist that, to entitle any foreign judgment to recognition in

61

another country, it is indispensably necessary that the court pronouncing the judgment should have jurisdiction over the cause, over the thing, and over the parties. Story Confl. Laws, ch. 15, §§ 585, 586, 588. If the jurisdiction fails as to either, it is treated as a mere nullity, having no obligation and entitled to no respect beyond the domestic tribunals; and this is equally true, whether the proceedings are *in rem* or *in personam*, or both. Story Confl. Laws, *supra; Buchanan* v. *Rucker, supra; Bissell* v *Briggs, supra; Shumway* v. *Stillman,* 6 Wend. 447; *Woodward* v. *Tremere et al.* 6 Pick. 354; *Hall* v. *Williams,* 6 Pick. 232; *Ferguson* v. *Mahon,* 11 A. & E. 179; *Boston India Rubber Factory* v. *Hoit,* 14 Vt. 92; *Woodruff* v. *Taylor,* 20 Vt. 65; 2 Parsons Cont. 120, and cases cited. In proceedings *in rem*, it must appear that the parties in interest had notice, and an opportunity to appear and defend their interests. Proceedings by creditors against the personal property of their debtor in the hands of third persons, or against debts due to him by such third persons (commonly called the process of foreign attachment, or garnishment, or trustee process), are also treated as in some sense proceedings *in rem*, and entitled to the same consideration. In this last class of cases, it is to be borne in mind that to make any judgment effectual, the court must possess and exercise a rightful jurisdiction over the *res*, and also over the person so far as the *res* is concerned, otherwise it will be disregarded. Story Confl. Laws, ch. 15, § 592.

The fact that the plaintiff allowed Squires to do as he pleased with the property, that the latter called it his, and offered to sell it to the defendants and turn it on their debt against him, does not impair the title thereto which the power of attorney shows, and the referee finds, to be perfect in the plaintiff. Squires did not please and did not consent that the property should be taken by this process to pay his debt.

*Clarke & Haskins,* for the defendants.

Counsel for the plaintiff insist that exhibits numbered from 1 to 12 inclusive, offered in evidence on the trial, by the defendants, were improperly received by the referee, for the reason " that the judgment and proceedings (evidence by said exhibits) were

not pleaded in bar of this suit, as well as for any and all cause of objection."

We understand the rule of law to be well settled by repeated adjudications in this state, that the defendant may interpose any defence to the plaintiff's right of action, before the referee, that he could interpose if the case were on trial in the county court, under any form of pleading that would be an appropriate answer to the alleged cause of action, and that the entire cause is to be tried upon its merits, and not upon any particular issue made by the pleadings. *Eddy* v. *Sprague,* 10 Vt. 216 ; *Clifford* v. *Richardson,* 18 Vt. 620 ; *Hicks* v. *Cottrill,* 25 Vt. 80 ; *Briggs* v. *Oakes et al.* 26 Vt. 138 ; *Fulton* v. *Wiley,* 32 Vt. 762 ; *Cook* v. *Carpenter et al.* 34 Vt. 121 ; *Carter* v. *Howard,* 39 Vt. 106 ; *Howard* v. *Black,* 42 Vt. 258. Again, we contend that the question as to whether the referee erred in admitting said copies of record, is not properly before this court, inasmuch as no exceptions were filed by the plaintiff in the court below to the report, but only to the judgment upon the report.

We understand the rule of law to be, that where the real objection is that the referee received improper testimony, the question should be raised by counsel in the county court, the attention of the court should be called to it by a special exception, or a motion to recommit, and the record should show affirmatively that it was insisted on in the county court, and was determined against the excepting party. *George* v. *School District,* 20 Vt. 495 ; *Amidown & Co.* v. *Osgood et al.* 24 Vt. 278 ; *Perry* v. *Whitney,* 30 Vt. 390 ; *Johnson, admr.* v. *Dexter,* 37 Vt. 64 ; *Graham* v. *Stiles,* 38 Vt. 578.

Conceding the fact to be as found by the referee, that the plaintiff really owned the wagon in controversy ; still, we insist that the plaintiff should be held bound by the acts and representations of Squires in the premises. The plaintiff permitted Squires to take this wagon into a foreign country, among Squires's individual creditors, and to offer it in payment of his individual debts, to treat it as his own, to call it his property—in short to do with it as he pleased. If then the plaintiff through the agency of Squires, induced the defendants to do what they did in the way of collect-

ing their debt of Squires, and in so doing this wagon was seized and disposed of in the manner detailed, then we say, as against the defendants, the plaintiff has no remedy, and ought not to have.

The case shows that the plaintiff had timely notice of the proceedings then pending in the courts of Canada, and did not, either by himself or his agent Squires, interpose; that in consequence of the false representations made by Squires as to his absolute ownership of the property, without disclosing that he was there in the capacity of an agent for any one, or for any purpose, these defendants have been put to great trouble and expense and have suffered serious injury. This being so, that under all the circumstances of this case as detailed in the bill of exceptions, the plaintiff should be held implicated to the fullest extent in whatever Squires said or did, and should be unconditionally bound by his declarations. Story Agency, §§ 91, 93, 127, note 2; *Fitzsimmons* v. *Joslin*, 21 Vt. 129; *Barber* v. *Britton & Hall*, 26 Vt. 112; *Burt* v. *Palmer*, 13 Petersd. Abr. 513; *Peto* v. *Hague*, Ib. 518; *Pickard* v. *Sears et al.* 6 A. & E. 469; *Cady* v. *Owen*, 34 Vt. 598.

If plaintiff is estopped in Canada, by the proceedings of the court there, he has no remedy here. The trustee or garnishee process was wholly unknown at common law; it is a proceeding authorized and regulated by statute, and is in a certain sense a proceeding *in rem. Huntington* v. *Bishop & Tr.* 5 Vt. 186; *Woodruff* v. *Taylor*, 20 Vt. 65; Story Confl. Laws, § 592 a. "A nation within whose territory any personal property is actually situate, has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there." "Whatever the court settles as to the right or title, or whatever disposition it makes of the property by sale, revendication, transfer, or other act, will be held valid in every other country where the same question comes directly or indirectly in judgment before any other foreign tribunal." Story Confl. Laws, §§ 550, 591, 592, 592 a, 593; *Bissell* v. *Briggs*, 438, *supra*; *Hull* v. *Blake*, 13 Mass. 152; *Woodruff* v. *Taylor*, *supra*. The referee finds, that under the laws of Canada, Squires had such notice by virtue of the proceedings in their courts, as to make the judgment lawful

and conclusive everywhere as to him. In law, the principal and agent are considered one and the same person, and therefore notice to the agent is notice to the principal. *Caldwell* v. *Ball*, 13 Petersd. Abr. 511 ; *Fitzherbert* v. *Walker*, Ib. 514. This being so, the courts of this state will leave the title to the property in controversy where the court, within whose jurisdiction the property was situated, placed it.

The opinion of the court was delivered by

Ross, J. The power of attorney given by the plaintiff to Asahel P. Squires, was sufficiently broad in the language used, to empower said Squires to have appeared for the plaintiff, and to have litigated the plaintiff's right to the wagon in controversy, in the proceedings in favor of the defendants in Canada. But he did not do so, nor undertake to do so, nor did the Canadian court undertake in any way to bring the plaintiff, or Squires as his appointed attorney, before it, nor to adjudicate the plaintiff's right to the wagon in controversy. Hence, except to show that the wagon was rightfully in Canada with the consent of the plaintiff, the consideration of the power of attorney can be laid out of the case. It need not be considered in reference to the notice Squires had of the proceedings in favor of the defendants in the Canadian court, for the case finds that the plaintiff, through Squires, had actual notice of those proceedings. The plaintiff, although he had notice of the proceedings in the court in Canada, was under no obligation to volunteer to make himself a party to those proceedings ; neither was he bound to have submitted himself to the jurisdiction of that court, if it had endeavored to have made him a party to those proceedings, and had given him notice thereof through Squires. *Price* v. *Hickok*, 39 Vt. 292, and case cited in the opinion. He owed no allegiance to the laws of Canada. The Canadian court had, and could have, no jurisdiction over the person of the plaintiff, except such as he might volunteer to give it. There being no duty resting upon the plaintiff to submit the determination of his right to the wagon in controversy to the Canadian court, and that court having no power to compel him to do so, he could, though notified, refrain from

participating in those proceedings by setting up his claim to the wagon and having it therein adjudicated, with perfect impunity. Being under no legal nor moral obligation to speak in those proceedings, his silence in regard to his claim to the wagon, or failure to make himself a party to those proceedings, cannot prejudice his rights now. A man's silence in regard to his rights to property can never affect him adversely, unless at the time he was silent there was resting upon him a duty to make those rights known. The case is barren of any facts essential to make the proceedings in the Canadian court an estoppel *in pais* upon the right of the plaintiff to recover for the wagon. Stripped of these two elements, the case is entirely within the law enunciated in *Woodruff* v. *Taylor*, 20 Vt. 65. That case was twice argued, well considered, and concurred in by all the members of the court. It is sustained by numerous decisions in this and other countries. It adjudicated in reference to the binding force of a judgment and sale of property under the same laws of Canada under which the judgment and sale in favor of the defendants was procured. We have no inclination to attempt to disturb the law announced in that case, and it must control the decision of this case. The *pro forma* judgment of the county court is reversed, and judgment rendered for the plaintiff to recover the sum of $125, with interest thereon from the 25th of June, 1869, and his costs.