Spear, J.
The questions arising in the case are presented by the demurrer to the answer. It will be observed that there is no denial of the allegations that at the time of the effecting of the insurance upon the life of'William Armstrong he and the defendant were residents of and domiciled in Ohio, and that they continued to so reside until his death, and she has ever since resided within the state; that the premiums, $594 each year, were wholly paid ■by the husband ; that the debts of the estate are over three thousand dollars, while the assets are not more than seven hundred, and that the defendant has received from the insurance company the entire amount of the insurance money covered by the policy, ten thousand dollars.
The claim of the plaintiff is based upon the statute of Ohio, section 3268, while the defendant’s claim is that the rights of the parties are measured by the laws of Pennsylvania, the place where the contract was made and was to be enforced, and that those rights have been adjudicated and determined by the decree and judgment of the court of common pleas of Philadelphia, set up in the second defense of the answer. It is urged that by the common law the contract of insurance is to be construed by the law of the place where made; that the law of that place governs as to the nature, obligation, and interpretation of the contract; that when the plaintiff would have no right of action by the law of the state where the contract was made and to be performed, he can have none here, and that, by the laws of Pennsylvania and by virtue of the contract, the right vested in the defendant to receive for her own exclusive use the whole of the money secured by the policy.
Assuming, without holding, that the law of Pennsylvania is sufficiently pleaded in the answer, and that unless the question is determined by the statute referred to, the claim made by the defendant as to the effect of the law of *620 Pennsylvania upon the rights of the parties here is conclusive, how, if at all, are those rights affected by section 3628 of the-Revised Statutes? That section reads as follows :
“Any person may effect an insurance on his life, for any definite period of time, or for the term of his natural life, to inure to the sole benefit of his widow and children, or of either, as he may cause to be appointed and provided in the policy; and the sum or net amount of insurance becoming due and payable by the terms of insurance shall be payable to his widow, or to his children, for their own use, as provided in the policy, exempt from all claims by the representatives and creditors of such person; but the amount of premium annually paid on such policy shall not exceed the sum of one hundred and fifty dollars, and, in case of such excess, there shall be paid to the beneficiaries named in the policy such portion of the insurance as the sum of one hundred and fifty dollars will bear to the whole annual premium, and the residue to the representatives of the deceased.”
In obtaining an insurance of this kiud the manifest intent of the husband is to make provision for those dependent upon him, a purpose every way rightful and laudable. It is to be done by applying, from year to year, the money of the husband, obtained from proceeds of his own labor or otherwise, to the future use and benefit of those who stand in such relation to him as to give them a natural claim to his efforts, forethought, and bounty. And up to a.certain point, as to expenditure, such provision may legally be made. -In the same spirit our laws allow to the widow dower in lands, use of the mansion-house one year, a homestead right, a year’s support out of the personalty, a given proportion of the residuum after debts are paid, and certain specific articles of personal property, if such the deceased possessed. But the same laws recognize others as having rights as regards the property of the deceased. The creditors are not to be wholly ignored, even though there be a needy widow and needy children. As to the section referred *621 to, while it recognizes the right of the husband to make provision for those of the family, who may survive, to the extent, of one hundred and fifty dollars yearly thus invested, it also provides that as to insurance effected by payments over that sum it shall inure to the legal representative. No question is made that as to contracts with Ohio companies the statute would apply. Should it receive such construction as to confine its operation to that class of contracts? It is not doubted that it is competent for the gen- , eral assembly to enact laws which in effect forbid citizens of the state from resorting to the courts of sister states for 'the purpose of defeating the operation of laws of Ohio as to questions which affect the rights of other citizens of Ohio. The law which gives to a debtor, the head of a family, and not the owner of a homestead, an exemption as against a claim of a creditor in attachment, where the sum due the debtor is shown to be necessary for the support of the family, is a law of that kind, inasmuch as it is held that such creditor may be enjoined from bringing action in courts out of Ohio where no such exemption could be permitted. And the law in question, if it applies to policies issued by companies other than those organized in Ohio, is an inhibition against citizens of Ohio placing moneys beyond the reach of creditors by entering into contracts with insurance companies organized out of this state. It will be noticed that the words of the statute do not limit its application. The language is comprehensive, and in terms it applies to all contracts of insurance obtained by citizens of the state. Why should we assume that the legislature intended that if the company happen to be a home company the statute applies, while if one located in another state it does not apply? Why not assume, rather, that that body.intended to correct the mischief which the very enactment of the statute raises the implication then existed ? It is but the ordinary rule to give such construction to statutes as will advance the remedy and correct the mischief. Applying the law only to home companies would, in great measure, defeat the very purpose apparent in this legislation. The *622 general assembly must be assumed to have at least such general and common knowledge upon subjects of legislation as ia possessed by citizens at large, and it is matter of common information that the great proportion of policies written upon the lives of citizens of Ohio are issued by companies organized outside the state, and there is little doubt that this was true in a larger sense even, at the time this statute was enacted (1847), than it is now. Statistics, believed to be reliable, show that in the year 1884, out of about fifteen thousand policies and certificates written upon the lives of citizens of this state more than ten thousand were written by foreign companies, and out of thirty-three millions of dollars, gross amount covered by those policies and certificates, nearly twenty-five millions were in policies issued by foreign companies. It is probable that, prior to the organization of the various relief and aid associations now so common, the disproportion was greater than the above figures show.
The parties to this litigation are citizens of the state of Ohio, and were when rights under this policy accrued. Those rights are being adjudicated in the courts of Ohio. Why should those courts ignore our own law, or make it subordinate to the law of another state? We think they should not. To do so would permit a citizen largely indebted to invest his capital and earnings to an unlimited amount for the benefit of members of his family in insurance contracts in distant states, thus working a fraud upon deserving creditors by placing such sums beyond their reach, nothwithstanding such investments would be in spirit a plain violation of the whole policy of our laws regulating the respective rights of debtor and creditor. Very much more might be said in elaboration of this view, but we deem it unnecessary to take farther space, as we feel confident that enough has been indicated to make it clear that tne demurrer, as to the first defense of the answer, was well taken and should have been sustained.
Does the second defense set up in the answer stand in the way of a recovery ? The contention on part of de *623 fendant is that by the judgment of the Philadelphia court the matter in issue here is res adjudicate/,, and this is so if that court had jurisdiction of the subject-matter and of the person of the plaintiff. The record shows that the service on the plaintiff was by delivering to him, in Ohio, a copy of the rule of court requiring him to show cause why the court should not give direction to the company to bring the $10,000, owing by it on the policy, into court, and why he should not interplead with Mrs. Armstrong as to. conflicting rights to such money, together with a letter from the company’s attorney advising him to appear, and by like service afterward of a copy of a rule absolute and of citation to appearand interplead. Is such notice sufficient to require an Ohio administrator to go to another state to litigate in the courts of that state, with a citizen of Ohio, questions arising under the laws of Ohio affecting the estate which he represents, or refuse at his peril? It is probable that no injustice would in this case be done if the question were put in this way : Can a resident of Ohio resort to the courts of another state and there compel an administrator, resident of Ohio, and deriving his authority from the courts of this state, to litigate a dispute existing between them, wherein the rights of the administrator depends upon the law of Ohio, for the express purpose of evading the effect of our statute, and of obtaining a judgment which would be contrary to the law of the domicile of both ?
It is urged that when the company asked that an inter-pleader be awarded, and brought the money owing by it into court, the court then obtained jurisdiction of the fund, and from that time forward the proceeding was one essentially in rem, and the court having thus obtained jurisdiction of the res, and having given notice-according to the laws of Pennsylvania, had ample power to hear and determine, and having so heard and determined, the parties are bound by the judgment. That such proceeding could be in rem seems a novel doctrine. “In rem ” is understood to be a technical term, taken from the Roman law, and there *624 used to distinguish an action against the thing from one against the person, the terms in rem and in personam always being the opposite one of the other; an act in personam, being one done or directed against a specific person, while an act in rem was one done with reference to no specific person, but against or with reference to a specific thing, and so against whom it might concern, or “ all the world.” A proceeding brought to determine the status of the thing itself, the particular thing, and which is confined to the subject-matter in specie, is in rem, the judgment being intended to determine the state or condition, and, ipso facto, to render the thing what the judgment declares it to be, while a proceeding which seeks the recovery of a personal judgmeut is in personam. In the former, process maybe served on the thing itself, and by such service and making proclamation, the court is authorized to decide upon it without other notice to persons, all the world being parties; while in the latter, in order to give the court power to adjudge, there must be service upon those whose rights are sought to be affected. As regards rights, the terms signify the antithesis of “available against a particular person,” and “ available against the world at large.” Thus, “jura in personam are rights primarily available against specific persons, jura in rem rights only available against the world at large.” Beyond this, a judgment or decree is in rem, or in the nature of a judgment in rem, when it binds third persons, such as the sentence of a court of admiralty on a question of prize, or a decree of other courts upon the personal status or relation of the party, such as dissolution of marriage contract, bastardy, etc., a decree in probate court admitting a will to probate and record, granting administration, etc., or a decree of a court of a foreign country as to the status of a person domiciled there. ¥e quote from Freeman on Judgments the definition of judgment in rem given by that author: “An adjudication against some person or thing, or upon the status of some subject-matter, which, wherever audwhenever binding upon any person, is equally binding upon all persons.” In contrast, a judgmeut in per *625 sonant is, •“ in form, as well as substance, between the parties claiming the right; and that it is so inter partes appears by the record itself.” Woodruff v. Taylor, 20 Vt. 65. From all which it appears that a judgment in rem, at least when against any thing, may bind the res in the absence of any personal notice to the parties interested, but a judgment in personam, as we have seen, can have no validity except upon service upon the interested parties, or what is equivalent to it. J Why was the Philadelphia action, in its nature, not a proceeding between parties claiming right to money due under the policy, rather than a proceeding to determine the status of such money? If it was the former, then the efficacy of the judgment depended upon having the parties before the court, so that their conflicting claims could be adjudicated if the latter, then it would appear to be one wherein the court’s judgment would have been effectual and conclusive, without reference to whether the parties were before the court or not, and the rights of both of them could have been as well settled by the filing of a bill by the insurance company and the bringing of the money into court, and without the presence, by service or appearance, of either of the parties claiming to be interested in the fund. 'Tt was not the status of avy particular money-that was to be determined, for any money which was a legal tender would have effectually satisfied the claim of the party receiving it; nor was there any claim primarily by even the widow, much less the administrator, to any money in speciej, nor did either the company or the widow, at any time,“claim or admit that the administrator had any money or property within the jurisdiction of the court, or valid claim to any subject-matter sought to be affected by the decree to be rendered. The proceeding was clearly one of interpleader, and that only. We do not understand that an action in personam, simply because a debtor brings money, the right to recover which is in contention, and gives to the custody of the court a sum sufficient to discnarge his debt, changes into an action in *626 remj/or that an interpleader suit is, in its nature,.a proceeding in rem,] In the Philadelphia case the company could have begun the action by original bill and obtained a complete standing in court, if, with other proper averments, the pleader had alleged a willingness to bring the money into court. Manifestly, the action thus begun would not have been in rem. Then,’ does the mere fact that the company (the debtor) being sued, voluntarily delivers money to the clerk of the court rather than keep it in its own safe, or to its credit in bank, or loaned upon call, change the action from one in personam to one in rem ? We think notj
It will be borne in mind that the Philadelphia suit was essentially unlike an attempt to reach, by process of attachment, the property of an absent party. It was rather an attempt to estop the administrator from claiming any recovery against the company, to draw the estate of William Armstrong to a distant state for settlement, and an attempt to compel the administrator to litigate, against his will, in a Pennsylvania court, a controversy affecting the estate, and with another resident of Ohio; hence the class of cases which treat proceedings in attachment as substantially proceedings in rem have no application to the case at bar.
If the case made in the answer can not be treated as a suit in rem it appears clear that the judgment rendered is void as against the administrator for want of jurisdiction at least of his person. No support is given that judgment by the constitutional provision and the act of congress of 1790, passed pursuant to it, which gives in all states the same faith and credit to a judgment of a state as it has by law or usage in the courts of the state where rendered; for, whatever strict construction was given that provision by the earlier decisions, it is now well settled that parties sought to be affected by a judgment rendered in another state are not precluded from showingthat the court wherein the action was pending had no jurisdiction, either of subject-matter or of the person, for in order to entitle a judgment rendered to such full faith and credit the court *627 must have had jurisdiction as well of parties as of subject-matter.
The law on this point is well stated by Johnson, J., in Pennywit v. Foote, 27 Ohio St. 618, as follows : “ Prom a careful review of numerous cases, we find the rule now well settled that neither the constitutional provision, that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court in which the judgment offered in evidence was rendered, and such a judgment may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist, and this is true either as to the subject-matter or the person, or in proceedings in rem as to the thing.”
The state of Pennsylvania could not extend its sovereignty into the state of Ohio; it could not in an action in personam compel a citizen of this state to respond to the process of its courts served in this state. “ No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals.” Story on Conflict of Laws, section 539. “ The jurisdiction of state courts is limited by state lines, and, upon principle, it is difficult to see how the order of a court, served upon a party out of the state in which it is issued, can have any greater effect than knowledge brought home to the party in any other way. Mere knowledge of the pendency of a suit in the courts of another state, without service of the process, or an appearance, .is not sufficient, of itself, to compromise the rights of the party in this state.” Ewers v. Coffin, 1 Cushing, 23, 28.
The conclusion we have reached is strengthened by a consideration of the policy and provisions of our statute which directs in what county an administrator maybe sued. *628 Section 5031 of tbe Revised Statutes provides that actions against an executor, administrator, guardian, or trustee, maybe brought in the county wherein he was appointed or resides, in which case summons may issue to any county. Now, had this widow brought an action in Ohio to settle the rights of the parties to the amount due on this policy, the above section would seem to limit jurisdiction of such action to the courts of the county of Tuscarawas, and while so careful a provision is made as to the situs of suits against administrators in this state it would appear anomalous to permit the defendant, by choosing a court in another state, to compel the administrator to follow her there to defend the claims of the estate he represented.
We are of opinion that the demurrer to the answer should have been sustained.

Judgments reversed.