CENTRAL RY. SIGNAL CO. et al. v. JACKSON.

(District Court, E. D. Pennsylvania. December 5, 1918.)

No. 1625.

1. PATENTS ⬛114—SUIT TO OBTAIN PATENT—NATURE OF PROCEEDING—"IN-DEPENDENT PROCEEDING."

A suit in equity, under Rev. St. § 4915 (Comp. St. 1916, § 9460), to obtain issuance of a patent, although necessarily part of the application for a patent, is an independent proceeding, and not appellate.

2. PATENTS ⬛114—SUIT TO OBTAIN PATENT—NOTICE TO ADVERSE PARTIES.

In a suit in equity, under Rev. St. § 4915 (Comp. St. 1916, § 9460), to obtain issuance of a patent, the court will not make an order for substituted service on a defendant, but will leave complainant to give such "notice to adverse parties" as he deems sufficient.

In Equity. Suit by the Central Railway Signal Company and Frank Dutcher against George B. Jackson. On motion for order directing substituted service. Denied.

See, also (D. C.) 238 Fed. 625.

William Steell Jackson, of Philadelphia, Pa., for plaintiffs.

Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. It appears that a motion made in this case has not formally been disposed of. A statement of the record facts will present the purpose of the motion and effect of its allowance.

It is sufficient for this purpose to state that application was made for a patent, on a claimed invention of the plaintiff Dutcher, to the Commissioner of Patents. A like application was also made by the defendant, and an interference was declared, and an award of priority of invention was given the defendant. This proceeding passed through all the successive stages, original and appellate, and resulted in the final refusal of the Commissioner to issue a patent to the plaintiffs. The present bill in equity was then filed under the provisions of R. S. § 4915 (Comp. St. 1916, § 9460).

The defendant came into this jurisdiction for the sole purpose of testifying in the form of the taking of his deposition in some part of this patent litigation. He was here served with the subpœna, and a copy of the bill in this case, and was to all substantial intents and purposes so served when on the witness stand. This service was on motion set aside in deference to the general principle of comity, and the principle was strictly applied, for the reason that it would not answer to its purposes, unless it was so far recognized that a witness could come into a foreign jurisdiction, relying upon his immunity from service of process. If the immunity was sometimes granted and sometimes denied, the practical result would be the same as if no immunity was accorded. To give practical value to the principle, it must therefore be enforced and never denied, unless the case comes within the recognized exceptions. A practical test of the value of the principle is that the exceptions should be clearly enough defined,

so that counsel would be able to advise in a given case whether immunity from service would be granted or withheld.

Behind many rules of law, however, there is to be discovered a rule of policy as well as a principle of right. In such cases, the policy of the law should be served, but never, unless it is unavoidable, at the cost of a denial of a legal right. There is a legal right, indeed, two legal rights, which are to, some extent conflicting, presented in the instant case. One is the right of the plaintiff to make application for letters patent, and to pursue this application through the successive appellate actions to which the plaintiff has resorted. He is given by law the further legal right to make his appeal to a District Court, and to obtain the judgment of that court upon his other legal right to the grant of letters patent. It follows from this that no obstacle should be thrown in the way of his assertion of this right.

There is involved, also, however, the right of a defendant to be protected from any judgment or decree which will affect him, unless the court entering the judgment has jurisdiction both of the general subject-matter, of the particular cause, and of the parties. When properly interpreted, the latter means that he cannot be subjected to the judgment of any court unless he is both amenable to and has been served with the process of that court. Whenever there is a conflict between these two rights, the proper attitude of the court is to take jurisdiction of the case, if there can be found any mode of service of its process which brings a defendant before the court.

Generally speaking, there are three fact conditions, under any one of which process may be served. One is that known as personal service. This is always a good service (generally speaking) unless the defendant is for some reason at the time privileged. This method was tried, and it has been adjudged that the defendant was privileged. Another is the equivalent recognized by statutes or otherwise of personal service, as, for illustration, service by leaving a copy of the process at the dwelling house of the defendant, or other authorized place, with an adult there found.

A question of fact has been raised in this case of whether the defendant was so far a resident of this district as that he could be so served. The validity of such a service could be tested by a return setting forth the fact that service had been so made. No resort has been made to such a test.

There only remains, therefore, the third method of service, which is that now attempted, to wit, a substituted service. A trite illustration of such a form of service is afforded by cases in which service is made by publication or otherwise.

The general fact situation in the present case is this: If the defendant has any so-called home jurisdiction, it is in this district, and it is here, if anywhere, that he is amenable to the service of process. It is urged that, if the court cannot acquire jurisdiction of the defendant, the plaintiff is, as a practical consequence, prevented from asserting the right given him by the act of Congress. This would not justify the court in usurping jurisdiction, but it does call upon us to be scrupulously careful not to refuse to take jurisdiction, if such be authorized under R. S. § 4915. This court may have recourse to the

statutes of the state and to the practice in vogue in the state courts in all "civil causes other than equity," etc., under R. S. § 914 (Comp. St. 1916, § 1537). By R. S. § 917 (Comp. St. 1916, § 1543), the Supreme Court is empowered "to regulate the whole practice" in chancery proceedings, and subordinate to this R. S. § 918 (Comp. St. 1916, § 1544), confers a like power upon the District Courts.

The equity rules promulgated by the Supreme Court, under date of November 4, 1912, by rule 13 (198 Fed. xxii, 115 C. C. A. xxii), provide for service of subpœna only by personal service, or by copy left at the "usual place of abode" of the defendant, etc.

The rules of this court as adopted by the then Circuit Court do not seem to specifically provide for any mode of service, except notices of motions, etc., in pending cases.

[1] It is in consequence in effect urged by counsel on both sides of this question that the validity of service is dependent upon the other question of whether such a bill, as has been filed in this case, is an original proceeding or appellate. It is clear that the proceeding is technically not appellate. The statutes relating to the issue of patents provide for successive appeals, the purpose of which is to secure a review of any rulings made, and, if proper, a reversal of those rulings. Such proceedings are strictly and technically appellate. It is likewise clear that section 4915 strictly and technically gives original and independent jurisdiction to the court to adjudge, it is true, the same claim of right which was made in the other proceedings, and to reach a judgment which is different from, and in that sense a reversal of, the ruling made by the Patent Office, but the ruling thus first made remains and is not technically reversed.

This is the view expressed by the court in Butterworth v. Hoe, 112 U. S. at page 61, 5 Sup. Ct. 25, 28 L. Ed. 656. The view thus expressed is entirely consistent with the comments made upon it in Gandy v. Marble, 122 U. S. at page 439, 7 Sup. Ct. 1290, 30 L. Ed. 1223.

The comment that "the proceeding is in fact and necessarily a part of the application for the patent" is ex vi termini obviously true, because the sole purpose of such a bill is to secure the grant of a patent.

The distinction before pointed out, however, remains that the proceeding, though necessarily part of the application for a patent, is an independent proceeding, and not appellate, in the sense of being an appeal from the ruling first made. In other words, although its purpose is to secure the issue of a patent, the issue of which has been refused, it does not seek that issue through a reversal of the ruling first made, but through an independent finding that the applicant is entitled upon the merits of his application to a patent. In a very practical sense the result is a reversal, but such is not its legal purpose or effect.

The correct view, as presented in Butterworth v. Hoe, is that Congress has provided two modes of procedure through and by which a patent may issue. One is the usual application to the Commissioner of Patents. The other is by bill in equity. It is true that resort cannot be had to the latter until recourse has been first had to the former, but the two proceedings none the less are distinct, separate, and independent, and in all other respects than that indicated are in the

alternative. This results in the conclusion that no aid can be accorded the plaintiffs through the expedient of viewing the present proceeding as an appellate one, and we are driven to the provisions of R. S. § 4915, for such aid as is within the power of this court to afford.

The sections preceding 4915 provide for a mode of procedure which may in its course, as it did in this case, reach the Supreme Court of the District of Columbia. That is the high-water mark of that proceeding. Then comes into effect section 4915, which is operative only after the other proceeding has been concluded.

[2] The remedy prescribed is one by bill in equity, and the court having cognizance thereof may proceed to a finding that the applicant for a patent should have one issued to him, and such finding is authority to the Commissioner of Patents to grant letters patent. It is to be observed that what is to be determined is the right of the applicant. There may be cases in which no one has an interest in the question of the issue of the patent other than the interest of the general public. In such cases, the requirement is that a copy of the bill shall be served upon the Commissioner and all the expenses of the proceeding shall be borne by the applicant. There is in this provision recognition of the fact that there may be an "opposing party," and there is the further requirement that the court shall not proceed to an adjudication until after "notice to adverse parties and other due proceedings had."

The purpose to be served by this requirement of notice is obvious, but the proceeding itself in its main purpose and character is not only analogous to, but it is essentially, a mandamus proceeding, directed to the Commissioner of Patents, in which any party concerned may intervene pro interesse suo.

The point is not directly before us for decision, but it is incidentally involved in disposing of the motion made, as our conclusion with respect to the motion is that we should not make any order for a substituted service, but that the plaintiffs in the bill should follow the injunctions of the statute, to which reference has been made, of the service of a copy of the bill upon the Commissioner, or of notice to adverse parties, or both, and should be left free to do whatever in their judgment is a compliance with the statute, as well as a compliance with the requirements of the chancery practice and equity rules with respect to sufficiency of parties. In illustration of the latter requirement, objection might be made to a bill for defect of parties under rule 44 (198 Fed. xxx, 15 C. C. A. xxx). Such objection could then be disposed of. It would be premature to dispose of it now.

A question might also arise whether the court had cognizance of the case on "notice to adverse parties and due proceedings had" to enable it to adjudge the questions involved. This question, as all other questions in the cause, could be determined when the decree came to be entered, whether it were one pro confesso, or after trial on bill, answer, and proofs. R. S. § 4915, it is to be observed, makes no specific provision for the service of a subpœna or a copy of the bill, except in case of the Commissioner, and except, also, as such service may be implied by the requirement of notice and other due proceed-

ings. All such questions as who are necessary parties to such a bill, and whether notice in fact, however and wherever given, is a compliance with the statute, may be determined at the proper time.

The formal motion before us is formally disposed of by being denied without prejudice.