**ARMSTRONG et al. v. DE FOREST et al.**

(Circuit Court of Appeals, Second Circuit. July 12, 1926.)

No. 390.

**1. Patents ⊕ 114.**

In suit to establish right to patent granted to another, assignee, as holder of title to such patent, is indispensable party; joinder of licensees being insufficient, where assignee reserved substantial rights (Rev. St. § 4915 [Comp. St. § 9460]; Judicial Code, § 50 [Comp. St. § 1032]).

**2. Patents ⊕ 114.**

Suit under Rev. St. § 4915 (Comp. St. § 9460), to establish right to patent granted another, is not strictly speaking one in rem.

**3. Courts ⊕ 269—Suit to establish right to patent, if deemed one in rem, held not maintainable in district where assignee of patent did not reside or voluntarily appear (Rev. St. § 4915 [Comp. St. § 9460]).**

Suit under Rev. St. § 4915 (Comp. St. § 9460), to establish right to patent granted another, if deemed a suit in rem, cannot be maintained as such in district where assignee of patent does not reside or voluntarily appear; the res being the set of claims owned by assignee, and therefore situated in the district of its residence.

**4. Action ⊕ 16.**

A res on which to adjudicate, and that within the jurisdiction, is essential to suit in rem, strictly speaking.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Edwin H. Armstrong and others against Lee De Forest and others. From a decree of dismissal, plaintiffs appeal. Affirmed.

This is the same litigation as that reported as Armstrong v. Langmuir in 6 F. (2d) 369. When the orders there made by this court had been complied with, the case stood, and now stands, thus: Armstrong asserts that he conceived an invention, and applied for a patent thereon. The invention he assigned to his coplaintiff, Westinghouse Company. Lee De Forest also applied for a patent on what is said to be the same invention, and so did Irving Langmuir. After prolonged proceedings in the Patent Office and in the courts of the District of Columbia, a patent for said invention was granted to De Forest, who was awarded priority in interference.

De Forest assigned his patent to the De Forest Radio Telephone & Telegraph Company, and that company granted to the American Telephone & Telegraph Company a license of great liberality, but with several express reservations.

Whatever rights Langmuir had in the premises have passed by assignment to General Electric Company.

As the case now stands, therefore, De Forest Radio Telephone & Telegraph Company is not a party, because it cannot be served with process in the Southern District of New York, and the object of suit is to procure authority, under Rev. St. § 4915 (Comp. St. § 9460), for the grant of a patent to Armstrong, notwithstanding the existing grant to De Forest and the claims of Langmuir.

In this condition of pleading and parties, Lee De Forest moved to dismiss the entire suit on the ground of the absence of De Forest Radio Telephone & Telegraph Company, a necessary party.

Motion was granted and this appeal followed.

Thomas Ewing, Drury W. Cooper, and John C. Kerr, all of New York City, for appellants.

Thomas G. Haight, of Jersey City, N. J., and Samuel E. Darby, of New York City, for appellee De Forest.

Harry E. Knight and Clifton V. Edwards, Sp. Asst. Attys. Gen., for the Secretary of the Navy and Alexander Meissner.

Before HOUGH, MANTON and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The present argument for plaintiffs has two parts, viz.: (1) If the instrument creating American Company's license, and annexed to the bill, be examined, it will be seen that American Company possesses thereunder rights of use, manufacture, and sale far greater than those remaining in De Forest Company. Wherefore a reasonable interpretation of the statute would render American Company, as the major party in interest, a sufficient party defendant in suit under Rev. St. § 4915, if such suit be regarded as in personam. (2) A suit under that statute is, however, properly regarded as in rem. Wherefore all parties, whether called necessary, proper, or convenient, may be brought in by notice, and service within the district is not a prerequisite to jurisdiction.

The first of these contentions confessedly involves a new construction of Rev. St. § 4915, considered with Judicial Code, § 50 (Comp. St. § 1032).

The statute gives a "remedy by bill in equity" and requires "notice to adverse parties," but it does not define the kind of notice, nor how that notice shall be given, nor does it use the word "serve," except by saying that, "where there is no opposing party," a copy of the bill "shall be served on the Commissioner" of Patents. The Code section provides that where, of several defendants, "one or more" are not inhabitants of the district and do not voluntarily appear, "the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it," but such judgment shall not "conclude or prejudice other parties not regularly served with process nor voluntarily appearing." Result claimed is that Armstrong can in the Southern district of New York proceed to prove that he is entitled to enjoy a monopoly of the invention concerned as against American Company, without any reference to De Forest Company, although from that concern all the rights of American Company were derived; so that after such a trial the Commissioner would be authorized to issue a patent to Armstrong for the same monopoly as that still vested in one who was no party to the suit, and whose rights under the express words of section 50 are neither concluded nor prejudiced by the proceeding.

The vista of not only possible, but probable, litigation opened by this construction may well give one pause, especially when it is seen upon what the doctrine rests.

It admittedly rests upon a preliminary question of fact, viz. an investigation by the court as to whether a defendant—i. e., in the language of the statute, an "opposing party" who can be served—has a greater interest in the monopoly of the existing patent than has the record owner thereof who cannot be served.

But the result of any such inquiry will usually depend on a variety of facts, and on facts varying with every invention sued for. Who can say with any certainty that a license under patent A given by the same form of words as that used for a license under patent D, gives the same quantum of interest? The answer (if "interest" be used in any but a narrow legal sense) would depend often, if not usually, on the commercial possibilities of the patented invention. This patent furnishes an instance; for De Forest Company, in licensing (in effect) American Company, reserved "exclusive" rights in the patent for certain uses thereof, which we are by the theory of plaintiff called upon to value or appraise and compare with the rights or privileges as to which American Company became "exclusive" licensee. The question as to which of the two companies has the greater interest in the patent, in the sense of which is most interested in sustaining it, depends on the respective commercial values of the uses reserved and the uses parted with, and for answering such a question we have no more than the pleadings. And the patent relates to radio communication, a matter of which the history began but yesterday, while concerning its commercial or scientific possibilities prophecy is more dangerous than is usual even in that art.

We cannot think the rule proposed workable, or even possible. The fact always remains that the patent owner, the person whose property may be destroyed, is not reached, and after any decree can always say that he had not his day in court. Again, a suit under Rev. St. § 4915, in which the only defense is one offered by a licensee, is a great temptation to collusion, something not suspected here, but a point of weight as long as judicial decisions are precedents. Further, how can such a rule work, when there are several licensees in various parts of the country, and only one can be served in the district plaintiff prefers? The answer is

unfavorable, to say the least. For these reasons we decline the construction of Rev. St. § 4915, and Judicial Code, § 50, now argued, and hold that in such a suit the holder of title to the existing patent is a necessary party under general equitable principles, and a party who must be, in the language of the Code, "properly before" the court before "adjudication of the suit" can be had.

It is urged that this construction leaves an inventor defeated in the Patent Office remediless against his victorious rival, who after receiving a patent removes altogether from the United States. This is true, but the answer is that this remedy is at best a statutory anomaly, and Congress has not seen fit to provide for such a case.

The foregoing assumes that the suit is in personam, and, while direct authority on the point argued is lacking, the cases to be cited under the second point furnish, we think, implications quite inconsistent with the construction we have now rejected.

[2, 3] The second point, to the effect that a suit under Rev. St. § 4915, is really a proceeding in rem, is also confessedly novel, and some review of cases on the nature of such suits seems justified.

If a patent be refused, and there are no "opposing parties," except the Commissioner who refused it, Butterworth v. Hill, 114 U. S. 128, 5 S. Ct. 796, 29 L. Ed. 119, seems conclusive that the proceeding is a personal suit; and that it must be a plenary suit in equity, and not an ex parte proceeding, was held in Hammer v. Robertson (C. C. A.) 6 F.(2d) 460.

That the suit is also a new and independent proceeding to obtain a patent, and not an appeal from an antecedent decision, is well settled. Colman v. Hathaway (D. C.) 285 F. 602; Loughran v. Quaker, etc., Co. (C. C. A.) 296 F. 822, with full citations.

While the present argument is novel, the fact situation is not, for Butler v. Shaw (C. C.) 21 F. 321, and Central Signal Co. v. Jackson (D. C.) 254 F. 103, presented the same situation and the same lack of parties. In the Butler Case Justice Gray was evidently not aware of the in rem theory, but in the Central Signal Case the point was nearly stated by plaintiff's moving for substituted service under Judicial Code, § 57, a motion which presupposed that there was "real or personal property within the district." The motion was denied, but the report does not aid us.

Exhaustive inquiry into the nature of suits or proceedings in rem is not required just now. It may, however, be noted that

this suit cannot be, "in a strict sense, a proceeding in rem," for it is not "taken directly against property," nor has it for object "the disposition of the property, without reference to the title of individual claimants." This suit can only be called in rem, because "in a larger and more general sense the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein." Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Freeman v. Alderson, 119 U. S. 187, 7 S. Ct. 165, 30 L. Ed. 372; Arndt v. Griggs, 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918.

Undoubtedly the phrase has been used increasingly to cover cases where there was jurisdiction over property, or something affecting property, but lack of jurisdiction over persons who did or might assert an interest in the property. Thus the probate of a will has been often called a proceeding in rem, because it is instituted to "determine the state or condition of the thing itself, and the judgment is a solemn declaration upon the status of the thing." Woodruff v. Taylor, 20 Vt. 65. And for use of the term "quasi in rem" see Title, etc., Co. v. Kerrigan, 150 Cal. 289, 88 P. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199.

[4] We need not proceed, for whether the convenient phrase be used "strictly" or in a "general sense," or be excused by a quasi, there are two matters on which there is no dispute; i. e., there must be a res upon which to adjudicate, and that res must be within the jurisdiction—i. e., the power—of the court whose aid is asked.

There is agreement that the *thing* here in controversy is an invention and for our purposes Armstrong, De Forest, Langmuir, and Meissner (see 6 F.[2d] 369) all say (using the word untechnically) they made that invention, but legally it was an invention only in him who first came upon the idea.

Now plaintiffs assert that, since Armstrong was first, the invention, the res, is still in his brain, and since he dwells, brain and all, in the Southern district of New York, the invention is within the jurisdiction of the court of that district, and all the world can be compelled to come there and submit to an adjudication of the status of that invention. It, of course, follows that the other asserted inventors could do the same thing mutatis mutandis in their several districts of residence.

The possibility is an absurdity, which we think grows out of a mistake in selecting

the res in dispute. In the popular sense, four or more men invented the same thing, but in the legal sense what they all say they first discovered is represented by and expressed in certain claims now embodied in a patent owned by De Forest Company. If plaintiffs succeed, Armstrong or his assignee should receive a patent containing the same language; i. e., the claims would become plaintiffs'. It follows that the res (assuming that word to be correct) here is the set of claims now owned by De Forest Company, and therefore legally situated in the district of Delaware.

Result is that, without holding, but assuming, that a suit like this is one in rem, we find the res to be without the Southern district of New York. Wherefore it is ordered that the decree appealed from be affirmed, with costs.

MANTON, Circuit Judge (dissenting). This proceeding in equity invokes section 4915 of the United States Revised Statutes (Comp. St. § 9460), which provides:

"Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

The statute does not specify where the venue is to be laid, but provides for "notice to adverse parties." Personal service is not provided. The residence of the various defendants named in this proceeding indicates well the improbability and almost impossibility of securing personal service upon all adverse parties who might be interested in the outcome of such a proceeding. A multiplicity of suits would be unavailing, for in each instance they may be dismissed for

want of necessary party within the district. I think the proceeding is in rem. The res consists of what the statute says "a patent on application." Where section 4915 is invoked, the subject-matter to be litigated for is "the patent on application." It is not De Forest's patent, but Armstrong's application for which he seeks a patent. It is his concept; his right to a patent for it. It is like the will referred to as the res· in Woodruff v. Taylor, 20 Vt. 65. In probating a will, all parties having an interest are given notice. If they reside without the county or district, it is unnecessary to proceed against them within the county or district of their residence. The decision in the proceeding thus instituted determines the validity of the application for the patent—Armstrong's, not De Forest's. An adjudication in favor of the applicant merely authorizes the Commissioner to issue the patent, if the applicant otherwise complied with the requirements of the law. Gandy v. Marble, 122 U. S. 432, 7 S. Ct. 1290, 30 L. Ed. 1223.

If the suit is in rem, section 739 of the Revised Statutes does not apply. In Butterworth, Commissioner, v. Hill, 114 U. S. 128, 5 S. Ct. 796, 29 L. Ed. 119, and Barrett Co. v. Ewing, 242 F. 506, 155 C. C. A. 282, the Commissioner of Patents was the sole party defendant, and it was held that, since the residence of the Commissioner was in Washington, D. C., it was necessary to sue him there.

I dissent.