STANDARD OIL COMPANY, Plaintiff,

v.

MONTECATINI EDISON S.p.A., et al., Defendants.

PHILLIPS PETROLEUM COMPANY, Plaintiff,

v.

E. I. du PONT de NEMOURS & CO. et al., Defendants.

E. I. du PONT de NEMOURS AND COMPANY, Plaintiff,

v.

MONTECATINI EDISON S.p.A. et al., Defendants.

Civ. A. Nos. 4319, 4321 and 4323.

United States District Court, D. Delaware.

May 8, 1972.

Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del., William H. Vogt, III of Watson, Leavenworth, Kelton & Taggart, New York City, and Edward W. Warren of Kirkland, Ellis & Rowe, Washington, D. C. for Standard Oil Co. (Indiana).

C. Waggaman Berl, Jr. of Booker, Green, Shaffer, Berl & Wise, Wilmington, Del., Sidney Neuman and Harry J. Roper of Pendleton, Neuman, Williams & Anderson, Chicago, Ill., Donald J. Quigg and E. E. Innis, Bartlesville, Okl. for Phillips Petroleum Co.

Roger A. Hines, Wilmington, Del. and Gerald A. Hapka, Washington, D. C. and Louis F. Reed of Fish & Neave, New York City for E. I. duPont de Nemours and Co.

Edmund D. Lyons of Morris, James, Hitchens & Williams, Wilmington, Del., David H. Pfeffer and Thomas M. Gibson of Morgan, Finnegan, Durham & Pine, and White & Case, New York City for Montecatini Edison S.p.A. and Novamont Corp.

William Prickett of Prickett, Ward, Burt & Sanders and Clinton F. Miller, Wilmington, Del. for Hercules, Inc.

## OPINION

LATCHUM, District Judge.

All three of the above civil actions have been brought in this Court pursuant to 35 U.S.C. § 146 to review a decision of the Patent Office Board of Patent Interferences entered on November 29, 1971 which awarded priority of invention of the subject matter of Interference No. 89,634 to Montecatini Edison, S.p.A. ("Montecatini"). The parties in all three suits are identical except that Novamont Corporation ("Novamont"), a Delaware company and wholly owned subsidiary of Montecatini, was named as an additional party defendant in Civil Action No. 4321.

These cases are presently before the Court on the motions of Montecatini and Hercules, Inc. ("Hercules") to dismiss the three suits under Rule 12(b) (1) and (3), F.R.Civ.P., on the grounds (a) that this Court lacks jurisdiction over the subject matter of the actions and (b) that venue is not proper in this District. Alternatively, Hercules has moved to transfer the actions to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1406(a) or § 1404(a). Hercules also has moved for an award of costs and attorney fees. Novamont has moved to dismiss C.A. No. 4321 pursuant to Rule 12(b) (6) on the ground that the complaint fails to state a claim against it upon which relief can be granted.

### A. Background Facts

Patent Interference No. 89,634 was declared by the Patent Office on September 9, 1958. The purpose of the interference was to determine which of five patent applicants was entitled to priority of invention of a polypropylene product ultimately defined as:

"Normally solid polypropylene, consisting essentially of recurring propylene units, having a substantial crystalline polypropylene content."

The five patent applications involved in the interference were:

Application Serial No. 462,480, filed October 15, 1954, by Alex Zletz, assigned to Standard Oil Company (Indiana), (herein "Standard").

Application Serial No. 514,099, filed June 8, 1955, by Giulio Natta, et al., assigned to Montecatini Edison S.p.A.

Application Serial No. 523,621, filed July 21, 1955, by Edwin J. Vandenberg, assigned to Hercules, Inc.

Application Serial No. 556,548, filed December 30, 1955, by Warren Nesmith Baxter, et al., assigned to E. I. duPont de Nemours & Company (herein "Du Pont").

Application Serial No. 558,530, filed January 11, 1956, by John Paul Hogan, et al., assigned to Phillips Petroleum Company (herein "Phillips").

On October 6, 1964, during the course of the interference, the Board of Patent Interferences terminated the proceeding with respect to Vandenberg, Hercules' assignor, for the reason that Vandenberg was not the first inventor in view of the fact that his preliminary statement failed to allege a date of invention prior to the filing date of the Zletz application. Thereafter on November 10, 1964 Vandenberg and Hercules, as parties dissatisfied with a decision in Interference No. 89,634, brought an action under 35 U.S.C. § 146 in the United States District Court for the District of Columbia (C.A. No. 2794–64). Du Pont, Montecatini, Phillips and Standard were named as defendants in that suit. The plaintiffs therein sought the District Court's determination that the Board of Patent Interferences erroneously adjudged Vandenberg not the first inventor. The District of Columbia District Court on June 11, 1965 held that C.A. No. 2794–64 was properly brought under 35 U.S.C. § 146 but that it should be held in abeyance until a final award in priority had been made in Interference No. 89,634. Vandenberg v. E. I. duPont de Nemours & Co., 242 F.Supp. 188, 190 (D.D.C.1965).

Interference No. 89,634 continued to be litigated until November 29, 1971 when the Board of Patent Interferences finally awarded priority of invention of the subject matter of the interference to Natta, et al., Montecatini's assignors, on Patent Application No. 514,099. At the same time, the Board adjudged that the respective assignors to Standard, Du Pont and Phillips were not the first inventors of the subject matter of the interference.

During the week of January 24, 1972, Standard, Phillips and Du Pont each individually brought two civil actions under 35 U.S.C. § 146 to review the Board's award of priority of invention to Montecatini. One action was brought by each of them in this Court (the above three actions) and one by each of them in the District Court for the District of Columbia.[1] Thus, including Hercules' suit (C.A. No. 2794–64) filed in 1964 in the District Court for the District of Columbia, there are now seven separate actions pending in the two district courts, involving substantially the same parties,[2] seeking a determination of whether the Board of Interferences' award of priority to Montecatini was correct.

On February 28, 1972, on Montecatini's motion, the District of Columbia Court ordered the three recently filed actions in that court brought by Standard, Du Pont and Phillips to be consolidated for all purposes, including discov-

1. The three new District of Columbia actions are: DuPont v. Montecatini, et al., C.A. No. 162–72; Phillips v. Montecatini, et al., C.A. No. 163–72; and Standard v. Montecatini, et al., C.A. No. 164–72.

2. The inventors Natta, Pino and Mazzanti, Montecatini's assignors, who were adjudged the first inventors in Interference No. 89,634, were named as defendants in Civil Actions 162–72 and 163–72 in the District of Columbia Court. Each is a citizen of Italy, residing outside the United States. Vandenberg, Hercules' assignor, is a party plaintiff with Hercules in Civil Action 2794–64 in the District of Columbia Court. None of these individuals is a party in the Delaware actions. These individuals, who have assigned all their interests in their respective patent applications are not indispensable parties, although proper parties, to any of the seven pending actions. United States v. Washington Institute of Technology, 138 F.2d 25, 26 (C.A.3, 1943).

ery and trial, with the earlier action brought by Hercules in 1964.

It is undisputed that Montecatini is a corporation organized and existing under the laws of the Republic of Italy with its principal place of business in Milan, Italy.

### B. Motions of Montecatini and Hercules to Dismiss

█ Montecatini's and Hercules' motions to dismiss the Delaware actions under Rule 12(b) are based solely on the lack of subject matter jurisdiction and improper venue. It is extremely significant to note that these motions raised no question as to this Court's lack of *in personam* jurisdiction, the insufficiency of process or insufficiency of service of process with respect to Montecatini. At argument Montecatini clearly conceded that it was not challenging the sufficiency of process, the service of process or personal jurisdiction.[3] Indeed, when the 12(b) motions were filed and those motions omitted then available possible defenses of lack of jurisdiction over the person, insufficiency of process and insufficiency of service of process, such defenses and objections cannot thereafter be raised and must be considered waived. Rule 12(g) and (h), F.R.Civ. P.; Konigsberg v. Shute, 435 F.2d 551 (C.A.3, 1970); 2A Moore, Federal Practice (2d Ed.) ¶ 12.33, pp. 2446–2450. Thus, the only issues for determination on Montecatini's and Hercules' motions to dismiss are (1) whether this Court has subject matter jurisdiction and (2) whether venue is properly laid in this district.

### 1. *The issue of subject matter jurisdiction*

█ Montecatini and Hercules first contend that, since Montecatini is admittedly a foreign corporation, jurisdiction over the subject matter of these three civil actions to review an award of priority by the Board of Patent Interferences is vested exclusively in the United States District Court for the District of Columbia.

Hercules also argues that each of the five corporate parties to the present actions is an indispensable and adverse party. It further points out that Montecatini is an Italian corporation, Standard is an Indiana corporation and Du Pont, Phillips and Hercules are Delaware corporations. Thus, it contends that, since the corporate parties "reside" at their place of incorporation, there are ". . . adverse parties residing in a plurality of districts not embraced within the same state . . .," and that, consequently, § 146 mandates that these civil actions to review an award of priority can be heard *only* by the District of Columbia Court upon whom exclusive subject matter jurisdiction is conferred.

These two contentions are based on the literal language found in the second paragraph of 35 U.S.C. § 146 which reads:

"If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia *shall have jurisdiction* and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides. Summons against adverse parties residing in foreign countries may be served by publication or otherwise as the court directs." (Emphasis added.)

The Court is unable to agree with these contentions. Neither the language of the provision, its legislative history nor the cases decided under it, on close examination, indicate that it confers exclusive subject matter jurisdiction upon the District of Columbia Court or restricts this Court's subject matter jurisdiction granted by 28 U.S.C. § 1338(a).

█ Subject matter jurisdiction deals with the Court's competence "to hear

3. Tr. 64, 68. Tr. refers to the Transcript of Argument of April 12, 1972 (Docket Item 25, C.A. 4319).

and determine cases of the general class to which the proceedings in question belong; the power to deal with the general subject involved in the action." Noxon Chemical Products Co. v. Leckie, 39 F.2d 318, 320 (C.A.3, 1930), cert. den. 282 U. S. 841, 51 S.Ct. 22, 75 L.Ed. 747 (1930). Original jurisdiction over the subject matter of any civil action arising under the patent laws is vested exclusively in the United States District Courts by 28 U.S.C. § 1338(a) which provides:

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

35 U.S.C. § 146 is related to this jurisdictional statute in that § 146 grants to a party dissatisfied with an award of priority of invention in an interference proceeding a "remedy by civil action" in a district court as an alternative to an appeal to the United States Court of Customs and Patent Appeals. 35 U.S.C. §§ 146, 141. The first paragraph of § 146 states:

"Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, *may have remedy by civil action* . . . ."

The relationship between § 146, providing for a "remedy by civil action," and § 1338(a), which originates subject matter jurisdiction in district courts "of any civil action arising under any Act of Congress relating to patents . . ." (i. e. § 146), was clearly stated by Judge Edgerton in Amerio Contact Plage Freezers, Inc. v. Knowles, 107 U.S.App. D.C. 81, 274 F.2d 590, 591 (1960):

"The patent law provides: 'Any party to an interference dissatisfied with the decision of the board of patent interferences * * * may have reme-dy by civil action * * .*.' 35 U.S. C. § 146. The law concerning 'District Courts; Jurisdiction' provides: 'The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks.' 28 U.S.C. § 1338(a). *The District Court therefore had jurisdiction of the subject matter of the suit.*" (Emphasis added.)

Another case dealing with § 146 is Jean Patou, Inc. v. Societe Anonyme Societe Tech., Etc., 124 F.Supp. 145 (S.D. N.Y.1954). There Judge McGohey stated:

"It seems obvious that Section 146 gives the right to bring a civil action in any court of competent jurisdiction and that therefore *any District Court has jurisdiction of the subject matter.* In addition the second paragraph confers jurisdiction on the District Court for the District of Columbia in two types of cases where *personal* jurisdiction would otherwise be difficult or impossible to obtain." (Emphasis added.)

In Hazeltine Corporation v. White, 2 F.Supp. 94, 95 (E.D.N.Y.1933), aff'd 68 F.2d 715 (C.A.2, 1934), one of the defendants moved the New York District Court to dismiss the action to review a decision of the Board of Patent Interferences awarding priority on the ground that the court lacked subject matter jurisdiction. The defendant, relying on the language that the District of Columbia Court "shall have jurisdiction," argued that the later court was the only court of original jurisdiction in causes brought under the predecessor act to § 146 when it appeared that the residences of the parties are in a plurality of districts. This argument was rejected and the Court held that the jurisdiction given to the District of Columbia Court was not of an exclusive nature since the statute " . . . does not, expressly or by implication, restrict a plaintiff, who proceeds under section

4915,[4] from instituting his action in a District Court in which the necessary parties defendant reside." The New York District Court held that it had "jurisdiction of . . . the subject-matter of the litigation . . . " To the same effect is Judge Rodney's holding in Minnesota Min. & Mfg. Co. v. Chavannes Industrial Synthetics, Inc., 128 F.Supp. 659, 662 (D.Del.1955).

Montecatini's and Hercules' argument that § 146 is the sole statutory authorization for subject matter jurisdiction of these cases is patently absurd. If they were correct, there could be no subject matter jurisdiction in any court unless there were "adverse parties residing in a plurality of districts not embraced in the same state, or an adverse party residing in a foreign country" because § 146 makes no reference to any court having jurisdiction except in those two situations.

As will be hereinafter discussed, the purpose of § 146, relating to the District Court for the District of Columbia, was merely to provide for *long arm* service of process in order to obtain *in personam* jurisdiction in cases where the adverse parties do not reside in the same state or where a party is an alien. § 146 was never intended to constrict the grant of subject matter jurisdiction of district courts over civil actions arising under the patent laws as conferred by § 1338(a).

This Court therefore holds that it has subject matter jurisdiction under 28 U. S.C. § 1338(a) and 35 U.S.C. § 146 to review the award of priority by the Board of Patent Interferences involved in the present actions. The motions to dismiss for lack of subject matter jurisdiction will be denied.

### 2. *The venue issue*

Turning to the venue question, Montecatini and Hercules again point out that the adverse corporate parties in the interference are incorporated and thus reside in different federal districts and that Montecatini is an alien corporation. Based on these facts, they then argue, in moving to dismiss for improper venue, that the language of the second paragraph of § 146, quoted above, is a special venue statute, which, under the doctrine of Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228, 77 S. Ct. 787, 1 L.Ed.2d 786 (1957), supersedes and takes precedence over any general venue statute, i. e., 28 U.S.C. § 1391(c) or (d). In *Fourco*[5] the Supreme Court held that 28 U.S.C. § 1400(b)[6] is an exclusive venue provision for patent infringement suits and is not modified or supplemented by the expansive definition of corporate "residence" in § 1391(c).

The general venue statute for district courts, 28 U.S.C. § 1391, provides in part:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

(d) An alien may be sued in any district."

Of the five adverse parties to Interference No. 89,634, Du Pont, Hercules and Phillips are Delaware corporations and actions against them would be properly laid in this District for venue purposes under § 1391(c). Venue also would be proper in this District with respect to Montecatini under § 1391(d) as

---

4. Now 35 U.S.C. § 146.

5. Fourco, a West Virginia corporation, was sued in New York where it did business but had committed no acts of infringement. Plaintiff had contended that the term "resides" in § 1400(b) was modified by the broad definition of corporate residence in § 1391(c) and therefore per-

mitted suit wherever Fourco was doing business. The Supreme Court disagreed.

6. § 1400(b) provides that a patent infringement action may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

it is an alien corporation. While Standard, an Indiana corporation, might have had a proper challenge to venue under § 1391, it has expressly waived such an objection.[7] Consequently, if the general venue provisions of § 1391, quoted above, are applicable to these actions, venue has been properly laid in this District.

As previously indicated Montecatini and Hercules claim that the general venue provisions of § 1391, under the *Fourco* doctrine, have been superseded by the provisions of § 146 which they say are "special venue" provisions. The Court is unable to agree. In the Court's opinion § 146 is not a special venue provision which replaces the general venue statute. Rather, it provides the District Court for the District of Columbia with a method for invoking personal jurisdiction over, and effecting personal service upon, foreign corporations and adverse parties residing in different states. It is, in substance and intent, a federal "long-arm" statute whose constitutionality is premised on the District of Columbia's situs of a United States Patent. Compare: Japan Gas Lighter Assn. v. Ronson Corp., 257 F.Supp. 219, 227 (D. N.J.1966).

Legislative history indicates that the purpose of the concluding language of § 146 was to remedy a statutory anomaly. Before 1927, it often occurred that plaintiffs were unable to prosecute interference suits because process could not be served when there were multiple defendants having interests which made them indispensable parties who resided in different states or in foreign countries. Armstrong v. Langmuir, 6 F.2d 369 (C.A.2, 1925); Armstrong v. De Forest, 13 F.2d 438 (C.A.2, 1926), cert. den. 273 U.S. 734, 47 S.Ct. 243, 71 L.Ed. 865 (1926). As pointed out in the *De Forest* case, it was possible that an inventor, defeated in a patent office interference, would be remediless against his victorious rival, who after receiving a patent removed himself completely from the United States. The Court agreed that this was so and called it an anomaly under the existing statutory law. The Court further suggested that, if the defect were to be remedied, it was up to Congress to make the correction. Congress corrected the defect by the adoption of the Act of March 3, 1927 [8] which added the language now found in the concluding portion of § 146. It was adopted for the benefit of plaintiffs and not of defendants. It simply provided a supplemental forum in the District of Columbia to a plaintiff in an interference suit when he could not otherwise obtain service of process upon all indispensable defendants in other fora under the general personal jurisdiction and venue statutes.

This was the view of Judge Tyler in E. I. DuPont De Nemours & Co. v. Celanese Corp., 285 F.Supp. 819, 821 (S.D. N.Y.1968). In explaining the second paragraph of § 146 he stated:

"Similarly, the second paragraph of section 146 provides, in part, that the District Court for the District of Columbia 'shall have jurisdiction' in interference review cases where there are 'adverse parties' from different states involved. The section goes on to supply that court with long arm jurisdiction which extends to parties residing in foreign countries. This salutary scheme was devised in 1927 to enable certain multiparty interference suits to be brought where the necessary litigants could not otherwise be joined under the general jurisdiction and venue statutes."

The same reasoning was applied by Judge Coolahan in Japan Gas Lighter Association v. Ronson Corp., *supra*,

---

7. By its answers filed in C.A. Nos. 4321 and 4323, Standard has specifically waived all objections to venue for purposes of these suits. Venue, being a privilege personal to a defendant, may be waived at a defendant's election, as was done in these cases. Neirbo v. Bethlehem Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939); 1 Moore, Federal Practice (2d Ed.) § 0.146 [6].

8. 44 Stat. 1394.

when called upon to construe 35 U.S.C. § 293, which provides:

"Every patentee not residing in the United States may file in the Patent Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, *the United States District Court for the District of Columbia shall have jurisdiction* and summons shall be served by publication or otherwise as the court directs." (Emphasis added.)

In that case, Nationale, a foreign corporation, argued that venue was improperly laid in the New Jersey District Court under the general venue statute because § 293 was a "special venue" provision, which, under the *Fourco* doctrine, superseded the general venue provisions and mandated that the suit be brought only in the District of Columbia. The Court rejected this argument holding that § 293 did not replace the general venue statute because it was not meant to be a "special venue" provision. Instead it held:

". . . [§ 293] provides a method for invoking the Court's personal jurisdiction over foreign defendants by effecting service upon them outside the United States. In this sense it is, in effect, a federal 'long arm' statute, . . ."

[257 F.Supp. at 227.]

Another indication that Congress never intended § 146 to restrict venue exclusively to the District Court for the District of Columbia is revealed by a comparison of its language with that found in 35 U.S.C. § 145 relating to *ex parte* appeals from the Patent Office. § 145 provides in part:

"An applicant dissatisfied with the decision of the Board of Appeals may unless appeal has been taken to the United States Court of Customs and Patent Appeals, have *remedy by civil action against the Commissioner in the United States District Court for the District of Columbia* if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints." (Emphasis added.)

The conclusion is inescapable that when Congress intended the District of Columbia to be the *exclusive* forum for venue purposes it said so explicitly by requiring the "remedy by civil action" to be brought "in the United States District Court for the District of Columbia."

The moving defendants have relied heavily upon the decision in Mobay Chemical Co. v. Hudson Foam Plastics Corp., 172 U.S.P.Q. 700 (S.D.N.Y.1971) to support their contention here. They claim that the *Mobay* case stands for the proposition that in *all* § 146 cases, when there are adverse parties residing in a plurality of districts, the action is required to be brought *only* in the District of Columbia. Admittedly, there is language in the *Mobay* decision which seems to support this view. However, an analysis of the facts in *Mobay* indicates that what Judge Motley was saying is that the New York District Court did not have the requisite *in personam* jurisdiction over all of the indispensable party defendants since one individual defendant resided in New Jersey and was not amenable to process in New York. Under these circumstances the end result of *Mobay* was correct. On the other hand, if this Court has misconstrued the holding of the *Mobay* case and it was intended to support the broad proposition urged here by Montecatini and Hercules, then this Court declines to follow that decision.

Accordingly, the motions to dismiss for improper venue will be denied.

C. Novamont's Motion to Dismiss

Novamont has moved to dismiss C.A. No. 4321 pursuant to Rule 12(b)(6), F.R.Civ.P., on the ground that the

complaint fails to state a claim against it upon which relief can be granted. As indicated above, the complaint is predicated on § 146 to review an interference decision. The complaint alleges that the patent applications in Interference No. 89,634 were owned by Phillips, Montecatini, Du Pont, Standard and Hercules. (Pars. 8–13). The only mention of Novamont in the complaint appears in Paragraphs 6 and 7. Paragraph 6 asserts that Novamont is a wholly owned subsidiary of Montecatini. Paragraph 7 alleges (a) that Novamont is a Delaware corporation, has an office in New York and a manufacturing facility in West Virginia and (b) that all its capital stock is owned by Montecatini who manages and controls all of Novamont's business activities in this country through certain of Montecatini's key employees who serve as officers and directors of Novamont. In the prayers for relief, only Paragraph (b) mentions Novamont. That paragraph requested an order sequestering Novamont's shares of stock owned by Montecatini. The Court declined this order.

Significantly, the complaint does not allege that Novamont was a party to the interference or owns, or ever owned, any interest whatsoever in Montecatini's patent application in interference.

Rule 8(a), F.R.Civ.P., requires a complaint to set forth "a short and plain statement of the claim showing the pleader is entitled to relief," and in addition "a demand for judgment for the relief to which he deems himself entitled." The complaint totally fails to meet these requirements.

Furthermore, in a § 146 proceeding, "suit may be instituted against the party in interest as shown by the records of the Patent Office at the time of the decision complained of, but any party in interest may become a party to the action." The complaint shows on its face that Novamont was not a party to the interference and it does not otherwise show that Novamont has any interest whatsoever in the decision of the Patent Office.

■ Phillips contends, however, that Novamont should be retained as a party defendant to insure the cooperation of Montecatini in discovery proceedings. This is not a proper purpose to retain a party to a lawsuit who has no interest in the litigation. The complaint in so far as Novamont is concerned fails to state any claim upon which relief can be given or demand any relief. Novamont's motion to dismiss will be granted.

### D. Hercules' Motion To Transfer

Alternatively to its motion to dismiss, Hercules has moved to transfer these cases to the District Court for the District of Columbia either under the provisions of 28 U.S.C. §§ 1406(a) or 1404(a).

The transfer request under § 1406(a) may be disposed of quickly. That provision authorizes a court to dismiss or transfer when there is improper venue in the court where suit is brought. Since this Court has held that venue is properly laid in this District, the Court declines to transfer under § 1406(a).

■ Whether these cases should be transferred under § 1404(a) is to be judged by the standard whether it is "[f]or the convenience of parties and witnesses [and] in the interest of justice," since there is no question that these suits could have been brought in the District of Columbia. The burden of establishing that these actions should be transferred rests with Hercules. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (C.A.3, 1970), cert. den. 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

■ Of the five parties in interest to this litigation, only Hercules has moved to transfer. Phillips, Standard and Du Pont actively resist the motions. Montecatini has moved only to dismiss. While the plaintiffs in these actions filed identical suits in the District of

Columbia shortly after these suits were filed, the District of Columbia actions were entered solely to protect the plaintiffs' rights (in view of the sixty-day limitation period contained in § 146) in challenging the Patent Office decision in the event that Montecatini did not own the entire interest in the Natta, et al. application involved in the interference.[9]

Hercules has not argued that the District of Columbia is a more convenient forum for the parties and witnesses. Indeed it is difficult to see how such an argument could be made. Five infringement suits brought by Montecatini against seven corporate defendants have been in active litigation in this Court for the past four years. The patent involved in that litigation is characterized by Montecatini as a "divisional application" to the application in Interference No. 89,634. Moreover, Hercules is a Delaware corporation with its main office located a mere two blocks away from the Wilmington Courthouse. Under these circumstances, I find that Hercules has not met its burden of showing, from the standpoint of the parties and witnesses, that the District of Columbia is a more convenient forum than Delaware.

Rather Hercules appears to take the position apparently "in the interest of justice" that, since its District of Columbia action was filed in 1964 after Hercules was dismissed from the interference proceeding, and since the most recent actions filed in the District of Columbia have been consolidated with its original action, the consolidated action should take precedence over the Del-

aware cases based simply on the priority of filing dates. This fact alone, however, does not sustain Hercules' burden of establishing the need for a transfer particularly in the light of other factors. The related patent infringement litigation which has been pending in this Court before Chief Judge Wright for the past four years cannot be ignored. The Chief Judge's familiarity with the background facts easily suggests that this case might possibly be assigned to him for trial on the merits. Should this occur, it might well result in the conservation of judicial and litigant resources —an end always sought in the interest of justice.

Having considered the standards for transfer under § 1404(a), the Court concludes that Hercules has failed to carry its burden of establishing that the actions should be transferred to the District of Columbia. Accordingly, Hercules' motion to transfer pursuant to § 1404(a) will be denied.

### E.   Costs and Attorney Fees

Hercules has moved for an allowance of costs and attorney fees because the plaintiffs were not justified in filing these three actions and similar suits in the District of Columbia. The Court does not find that the plaintiffs were motivated by bad faith or that any of the actions were brought to harass Hercules. The plaintiffs believed this district court was a proper forum. Their belief having been vindicated by this decision, Hercules' motion for costs and attorney fees will be denied.

Submit order.

---

9. At the time these and the District of Columbia actions were commenced, Montecatini had not recorded in the Patent Office Natta et al.'s assignment to Montecatini, thus preventing a determination of the real party in interest as shown in the Patent Office records. It now appears in affidavits and answers filed in these cases that Montecatini has the sole ownership in the Natta, et al. application.