NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I join the en banc court’s holding that new evidence may be provided in a civil action brought in the district court under 35 U.S.C. § 145. However, the court also holds that when no new evidence is provided, the findings and rulings of the PTO receive the same deferential treatment in the district court as would apply if the cause were not a civil action under section 145, but instead were an Administrative Procedure Act direct appeal to the Federal Circuit under 35 U.S.C. § 141. That is not the statutory plan.
The statutory plan is designed to differ from such a duplicative procedure, not to create it. Nonetheless, the court today holds that for those issues for which the applicant relies on the same evidence as was before the patent examiner, the ruling of the PTO is not determined de novo but is reviewed with APA deference, identically to the section 141 appeal, except that the decision is initially made by one judge in the district court, en route to three-judge review if appeal is then taken to the Federal Circuit. No party presented or even contemplated such a redundant procedure, and no amicus discussed it. It is contrary to statute, to precedent, and to almost two centuries of legislative policy.
Section 145 requires the district court to determine whether “such applicant is entitled to receive a patent for his invention ... as the facts in the case may appear.” Since it is a de novo proceeding, the PTO findings and fact-based rulings are not reviewed on the deferential “substantial evidence” standard, and the methodology of analysis of the evidence does not depend on whether the PTO had also received the same evidence. Although an applicant *1339 who chooses a section 145 civil action is quite likely to present new evidence as to some issues, on other issues the applicant may choose to reargue the evidence that was before the PTO.
Usually the evidence before the PTO consists of references cited during examination — with the applicant arguing, in a section 145 action, that the PTO mis-weighed or misapplied or misunderstood the evidence. Such issues are often present in a section 145 action, where they receive de novo determination, whether or not new evidence is adduced in the district court. The purpose of the section 145 proceeding is to achieve fresh judicial determination of patentability issues that had been decided by the Patent Office, and to conduct this determination do novo on the evidence before the court, whether or not the same evidence or all of it was before the examiner. Thus, although this court’s affirmation of the principle of the do novo section 145 action is salutary, somehow a new flaw has crept in. The court’s promulgation of a different intellectual mechanism, depending on whether an issue did or did not receive evidence in addition to that which was before the examiner, creates a convoluted analytical process, a burden on the court as well as on objective analysis.
As the en banc court explains, the legislative purpose of the equity action was to assure that the courts had the last word as to entitlement to a patent. For a brief period after patent examination was renewed in 1836, only priority contests between competing inventors had judicial recourse. The Patent Act of 1839 extended judicial participation to “all cases where patents are refused for any reason whatever.” As the patent statutes continued to receive legislative attention, the Court explained in Butterworth v. Hoe, 112 U.S. 50, 61, 5 S.Ct. 25, 28 L.Ed. 656 (1884):
It is thereby provided that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent-office ... confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits.
The Court observed that “such de novo determination has been the uniform and correct practice in the circuit courts.” Id.; see, e.g., Ex parte Squire, 22 F. Cas. 1015, 1016 (C.C.E.D.Mo.1877) (“[T]he hearing is altogether independent of that before the commissioner, and takes place on such testimony as the parties may see fit to produce agreeably to the rules and practice of a court of equity.”).
The Court’s decision in Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), applying the Administrative Procedure Act’s standard of review to direct appeals to the Federal Circuit on the administrative record, did not deal with the section 145 civil action. Indeed, the APA recognized the preservation of previously existing judicial review mechanisms including those that provided for a trial de novo, stating that “[tjhe form of the proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by the statute.” 5 U.S.C. § 703. The APA states that nothing in the judicial review provisions of the APA “limit[s] or repeal[s] additional requirements imposed by statute or otherwise recognized by law.” 5 U.S.C. § 559.
Neither the APA nor Zurko obliterated the purpose or changed the structure of the section 145 action as a full de novo proceeding. In preserving this traditional *1340 path, analogy is seen to tax refund suits in the district courts or the Court of Federal Claims, where “a refund suit is a de novo proceeding.” Democratic Leadership Council, Inc. v. United States, 542 F.Supp.2d 63, 70 (D.D.C.2008); see Vons Cos. v. United States, 51 Fed.Cl. 1, 5 (2001) (“We begin with the axiomatic principle that tax refund cases are de novo proceedings. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). Factual issues in such cases ‘are tried ... with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings.’ Cook v. United States, 46 Fed.Cl. 110, 113 (2000). See also Dixon v. United States, 381 U.S. 68, 74-75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).”).
Such a de novo path, whether or not on the same evidence that was before the examiner, has long characterized section 145 actions and its predecessor bills in equity. See, e.g., Bernardin v. Northall, 77 F. 849, 851 (C.C.D.Ind.1897) (“The constitution and laws give a property right in his invention or discovery to an inventor, and it was the manifest legislative intent that such inventor should not be deprived of his property right in his invention until he had had his day in a court in which the party aggrieved by the determination of an executive officer might pursue his remedy judicially, according to the practice of a court of chancery.”).
Legislation concerning the bill of equity/civil action consistently recognized that the proceeding is a “new suit.” For example, in connection with the Patent Act of 1927 the Chairman of the House Committee on Patents, Congressman Albert H. Vestal, stated “if a party feels aggrieved, he can bring his suit in the equity court, but it is not an appeal. It is the bringing of a new suit.” To Amend Section 52 of Judicial Code and Other Statides Affecting Procedure in Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm, on Patents, 69th Cong., 1st Sess. 36 (1926). The issues of patentability are determined in accordance with the laws of patentability, on original jurisdiction undisturbed by whether the same evidence was previously before the patent examiners. As summarized by Emerson Stringham, Patent Interference Equity Suits § 7942, at 69 (1930): “A suit by a defeated applicant is an action de novo for the purpose of securing a patent.”
No rule or protocol requires that the civil suit cannot receive de novo adjudication based on the same documentary evidence that was before the Patent Office. See Central Ry. Signal Co. v. Jackson, 254 F. 103, 105 (E.D.Pa.1918) (observing that although the purpose of a proceeding under section 4915 “is to secure the issue of a patent, the issue of which has been refused, it does not seek that issue through a reversal of the ruling first made, but through an independent finding that the applicant is entitled upon the merits of his application to a patent”). The Court has repeatedly confirmed this understanding. See In re Hien, 166 U.S. 432, 439, 17 S.Ct. 624, 41 L.Ed. 1066 (1897) (“The bill in equity provided for by section 4915 is wholly different from the proceeding by appeal from the decision of the commissioner .... The one is in the exercise of original, the other of appellate, jurisdiction.”); Gandy v. Marble, 122 U.S. 432, 439, 7 S.Ct. 1290, 30 L.Ed. 1223 (1887) (“[T]he proceeding by bill in equity, under section 4915, on the refusal to grant an application for a patent, intends a suit according to the ordinary course of equity practice and procedure, and is not a technical appeal from the patent-office, nor confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits .... ” (citing Butterworth, 112 U.S. at 61, 5 S.Ct. 25)).
*1341 The applicant may not wish, or need, to present new evidence as to every issue of patentability. P.J. Federico observed in his definitive article, “Evolution of Patent Office Appeals,” that “[t]he bill in equity is not a technical appeal from a decision of the Patent Office, but is ‘a suit according to the ordinary course of equity practice and procedure.’ ” 22 J. Pat. Off. Soc’y 838, 937 (1940). Such “ordinary course” takes up the issues that the examiner had decided adversely to the applicant, on whatever evidence the applicant and the Patent Office present to the district court. I have come upon no legislative or precedential hint that there should be judicial deference in the equity action to the examiner’s findings for those issues upon which no new evidence is presented to the court.
The history of section 145 differs from that for priority contests between competing inventors, as discussed in Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894), now relied on by this court as meaning that in the absence of new evidence “the district court reviews the Patent Office fact findings for substantial evidence (i.e., according to the court/agency standard of review).” Maj. Op. 1332. That interpretation is contrary to Morgan v. Daniels itself, for the Court there recognized that it was dealing with a different statute, “where the question decided in the Patent Office is one between contesting parties as to priority of invention.” 153 U.S. at 125, 14 S.Ct. 772. Judicial review of priority contests is now codified at 35 U.S.C. § 146, which expressly provides for admission of the PTO record to “have the same effect as if originally taken and produced in the suit.” There is no similar provision in section 145, which instead requires the district court to adjudge entitlement to a patent “as the facts in the case may appear.” Section 145 calls upon the independent judgment of the district court, whether the evidence before the court augments or simply repeats the evidence that was before the Patent Office.[1]
This court’s new dual standard of evi-dentiary analysis in section 145 actions will not only come as a surprise to practitioners, but raises new problems of adjudication, for the weight of findings on various issues often must be balanced, in reaching the ultimate determination of patentability. I must, respectfully, dissent from this additional and unnecessary encumbrance on the patenting process.

. The PTO Solicitor and my colleagues in dissent argue that applicants will deliberately withhold evidence in their possession, in order to spring it on the district court under section 145. I share the view of the amici curiae that it is unlikely that applicants will withhold winning evidence from the examiner, in favor of a multi-year and expensive civil action in the district court.